**MEADOWBROOK WOMEN'S CLINIC, P.A., Plaintiff,**

v.

**STATE OF MINNESOTA, Defendant.**

Civ. No. 4-82-1422.

United States District Court, D. Minnesota, Fourth Division.

Feb. 23, 1983.

Larry D. Espel, Popham, Haik, Schnobrich, Kaufman & Doty, Minneapolis, Minn., for plaintiff.

Hubert H. Humphrey, III, Atty. Gen., State of Minn., and Audrey Kaiser Manka, Sp. Asst. Atty. Gen., Minneapolis, Minn., for defendant.

## MEMORANDUM AND ORDER

MacLAUGHLIN, District Judge.

This matter is before the Court on the plaintiff's motion for summary judgment. For the reasons stated below, the Court will grant the plaintiff's motion.

FACTS

Plaintiff Meadowbrook Women's Clinic, P.A. (Meadowbrook) is a Minnesota corporation that provides pregnancy tests, abortion services, and other reproductive health services. Meadowbrook, which is one of the largest abortion providers in the Upper Midwest, performs approximately one-half of all abortions performed in Minnesota.

Since 1973, Meadowbrook has unsuccessfully attempted to place advertisements concerning its abortion services in Northwestern Bell Telephone Company's (Northwestern Bell) yellow pages. Northwestern Bell has refused to accept these advertisements because such advertisements are ille-

gal under Minnesota Statute § 617.28.[1] Northwestern Bell's policy concerning the acceptance of such advertisements varies from state to state. In Nebraska, Iowa, and South Dakota—none of which has a statute similar to Minn.Stat. § 617.28—Northwestern Bell accepts advertisements for abortion services that Northwestern Bell finds meets its standards of good taste.

Meadowbrook seeks a declaration that Minn.Stat. § 617.28 is unconstitutional. Specifically, Meadowbrook claims that the statute prevents it from exercising its right of free speech in violation of the first and fourteenth amendments to the United States Constitution. Plaintiff Meadowbrook has moved for summary judgment on the grounds that Minn.Stat. § 617.28 as it applies to the advertisement and publication of information concerning the inducement of miscarriages or abortions is unconstitutional on its face.

Defendant State of Minnesota (State) argues that the statute is entitled to a presumption of constitutionality. In addition, the State contends that the commercial speech at issue may be suppressed.

## DISCUSSION

The issues presented in this case are legal issues. Therefore, summary judgment is appropriate. Fed.R.Civ.P. 56(c). Two types of legal issues confront the Court: procedural and substantive.

### 1. *Procedural Issues*

The United States Supreme Court recently reiterated, in *Valley Forge Christian College v. Americans United for Separation of Church and State, Inc.*, 454 U.S. 464, 102 S.Ct. 752, 70 L.Ed.2d 700 (1982), the requirements for and policies behind the standing requirement. The standing requirement is an outgrowth of Article III of the Constitution which limits federal judicial power to the resolution of cases and controversies. The Supreme Court stated that the standing requirement "subsumes a blend of constitutional and prudential considerations ... [which require] the party who invokes the court's authority to 'show that he personally has suffered some actual or threatened injury as a result of the putatively illegal conduct of the defendant' ... and that the injury 'fairly can be traced to the challenged action' and 'is likely to be redressed by a favorable decision.' " 102 S.Ct. at 758 (citations omitted).

The policies served by the standing requirement include the following: 1) assures that legal questions are presented in a concrete factual context; 2) limits the likelihood of only superficially related suits; 3) restricts the use of the courts as merely publicly funded forums for public grievances; 4) limits access to those who have a stake in the outcome and thus will be highly motivated to provide a thorough airing of the issues; and 5) reinforces comity between federal and state governments by limiting review of the constitutionality of a state statute to specified circumstances. 102 S.Ct. at 759. Even if a claimant establishes a redressable injury sufficient to

---

**1.** Certain medical advertisements are illegal under Minn.Stat. § 617.28, which provides as follows:

Subdivision 1. Placing advertisement; penalty. Any person who shall advertise, in his own name or in the name of another person, firm or pretended firm, association, corporation or pretended corporation, in any newspaper, pamphlet, circular, or other written or printed paper, or the owner, publisher, or manager of any newspaper or periodical who shall permit to be inserted or published in any newspaper or periodical owned or controlled by him, the treatment or curing of venereal diseases, the restoration of "lost manhood" or "lost vitality," or shall advertise in any manner that he is a specialist in diseases of the sexual organs, or diseases

caused by sexual weakness, self-abuse, or excessive sexual indulgence, or in any disease of like causes, or who shall advertise in any manner any medicine, drug compound, appliance or any means whatever whereby it is claimed that sexual diseases of men and women may be cured or relieved, or miscarriage or abortion produced, shall be guilty of a gross misdemeanor and shall be punished by a fine of not less than $50 nor more than $500 or by imprisonment in the county jail for not more than six months.

Subd. 2. Publication; penalty. Any person publishing, distributing, or causing to be distributed or circulated, any of the advertising matter hereinabove prohibited, shall be guilty of a misdemeanor and punished as prescribed in subdivision 1.

meet Article III's requirements, the Supreme Court has refused to adjudicate cases in which the injury is generalized and better redressed by legislative bodies or cases in which the claimant's allegations fall outside "the zone of interests to be protected or regulated by the statute or constitutional guarantee in question." *Association of Data Processing Service Organizations, Inc. v. Camp,* 397 U.S. 150, 153, 90 S.Ct. 827, 829, 25 L.Ed.2d 184 (1969).

Two standing issues must be resolved before the Court can reach the merits of this case. The first issue is whether the harm alleged by the plaintiff can fairly be traced to the State's actions. A related issue is whether a favorable ruling by the Court would be likely to redress the claimed harm. The plaintiff claims that it is prevented from purchasing advertisements in Northwestern Bell's yellow pages because of the statute. The plaintiff does not claim that either it or Northwestern Bell is threatened with prosecution under the statute.

 The plaintiff argues that although it has not suffered an injury because of the threat of prosecution under the statute, it has suffered injury in fact because of the effect the statute has had on Northwestern Bell.[2] It is clear that economic injury or the prospect of economic injury can satisfy the injury in fact requirement. If the plaintiff has suffered economic injury because of the State's actions, it may have standing to challenge the statute. *See, e.g., Truax v. Raich,* 239 U.S. 33, 36 S.Ct. 7, 60 L.Ed. 131 (1915) (employee allowed to challenge state law which he claimed would result in his loss of employment even though the law's criminal sanctions directly

affected only the employer). In the present case, the plaintiff alleges it has suffered economic injury as a result of being denied its first amendment right of free speech. The Court concludes that the plaintiff has satisfied the injury in fact requirement and possesses the type of stake in the outcome required by Article III.

The policies underlying the standing requirement are satisfied in this case. The case presents a concrete dispute arising out of particular incidents. The Court is not merely providing a public debating forum on the advisability of such actions in general, but is limiting its ruling to the facts involved in Northwestern Bell's refusal to publish the particular advertisements. The plaintiff has a stake in the outcome since it is likely to gain additional patients if Northwestern Bell publishes the plaintiff's advertisements.

The Court must also determine whether granting the requested remedy would actually redress the alleged harm. In *Simon v. Eastern Kentucky Welfare Rights Organization,* 426 U.S. 26, 96 S.Ct. 1917, 48 L.Ed.2d 450 (1976), the Supreme Court held that indigents lacked standing to challenge the validity of Internal Revenue Service (IRS) regulations reducing the amount of free medical care hospitals must provide in order to obtain tax benefits as a charity. The Supreme Court stated that it was purely speculative whether a change in the IRS regulations would increase free medical services since the hospitals' actions might have been governed by other factors than the IRS regulations. 426 U.S. at 42–43, 96 S.Ct. at 1926.

---

**2.** In *Mitchell Family Planning, Inc. v. City of Royal Oak,* 335 F.Supp. 738, 740 (E.D.Mich. 1972), the court noted the general rule that a federal suit seeking to declare a state criminal statute unconstitutional is improper unless there is a threat of prosecution under the statute. Without such a threat, no live controversy may exist and a court would merely be giving an advisory opinion not ruling on a concrete case. *See Younger v. Harris,* 401 U.S. 37, 42, 91 S.Ct. 746, 749, 27 L.Ed.2d 669 (1971). A state may choose never to enforce a challenged statute, so a plaintiff could not claim any real harm traceable to the statute.

If a plaintiff is being prosecuted under a challenged statute at the time a federal suit is filed, a live controversy exists. Federal courts in most such cases abstain from granting declaratory relief concerning the validity of the statute. *See Younger v. Harris,* 401 U.S. 37, 41, 91 S.Ct. 746, 749, 27 L.Ed.2d 669 (1971). Federal courts will review the validity of a state statute after a plaintiff has been convicted. *See, e.g., Wisconsin v. Yoder,* 406 U.S. 205, 92 S.Ct. 1526, 32 L.Ed.2d 15 (1972) (parent convicted and fined $5 for failure to send child to school was allowed to challenge state statute on first amendment grounds).

In the present case, the State argues that a change in the statute is unlikely to change Northwestern Bell's policy of refusing to accept abortion advertisements. The evidence does not support the State's argument. Lloyd Otto (Otto), directory staff supervisor for Northwestern Bell, states in an affidavit that the company's refusal to accept such advertising is motivated by Northwestern Bell's "interpretation of State law [and] internal guidelines on acceptable advertising." In a letter to the plaintiff, Karen Edlund (Edlund), a Northwestern Bell directory representative, states that the plaintiff's request for advertising space has been denied because section 617.28 prohibits advertisements "dealing with 'abortions.'" Edlund does not mention any internal guidelines.

In another affidavit Otto states that Northwestern Bell's acceptance of such advertisements varies from state to state depending upon whether the state has a law similar to the one at issue in the present case. According to Otto, Northwestern Bell does not preclude advertisements for abortion services in Nebraska, Iowa, and South Dakota because those states do not have statutes that restrict such advertisements. Northwestern Bell has published an advertisement for abortion services in the yellow pages distributed in Des Moines, Iowa. Thus, it is clear that not only has the plaintiff been injured by the statute in question but also that the remedy sought would almost certainly redress the alleged harm.

Another standing issue is closely linked to the substantive issues presented in the case: whether the plaintiff's allegations fall within "the zone of interests" protected by the first amendment. *See Association of Data Processing Service Organizations v. Camp,* 397 U.S. 150, 152, 153, 90 S.Ct. 827, 829, 25 L.Ed.2d 184 (1969). This issue will be discussed in conjunction with the discussion of the substantive issues in the case.

2. *Substantive Issues*

■ If a court determines that a state statute is aimed at regulating the content of communication, as in the present case, it must then determine whether the content is protected or unprotected speech. The United States Supreme Court in *Chaplinsky v. New Hampshire,* 315 U.S. 568, 62 S.Ct. 766, 86 L.Ed. 1031 (1942), listed several kinds of speech that are not protected by the first amendment:

> There are certain well-defined and narrowly limited classes of speech, the prevention and punishment of which have never been thought to raise any Constitutional problem. These include the lewd and obscene, the profane, the libelous, and the insulting or "fighting" words—those which by their very utterance inflict injury or tend to incite an immediate breach of the peace.

315 U.S. at 571–572, 62 S.Ct. at 769 (footnotes omitted).

In commercial speech cases, the United States Supreme Court has developed a four-part analysis. *Central Hudson Gas & Electric Corp. v. Public Service Commission of New York,* 447 U.S. 557, 566, 100 S.Ct. 2343, 2351, 65 L.Ed.2d 341 (1980). The plaintiff has the burden of establishing that its speech falls within the first amendment's protection. If the plaintiff successfully bears its burden, the State must demonstrate that the regulation of the protected speech furthers a compelling state interest. *Bates v. Little Rock,* 361 U.S. 516, 524, 80 S.Ct. 412, 417, 4 L.Ed.2d 480 (1960). Even if the State succeeds in showing a compelling state interest, it still must establish that the restrictions imposed by the statute directly advance the State's goal and are not more extensive than is necessary. *See, e.g., Linmark Associates, Inc. v. Township of Willingboro,* 431 U.S. 85, 95–97, 97 S.Ct. 1614, 1619–1620, 52 L.Ed.2d 155 (1977) (an ordinance prohibiting the posting of real estate "For Sale" signs in an effort to forestall "white flight" and maintain integrated housing is unconstitutional because ordinance was not closely linked to goal); *Shelton v. Tucker,* 364 U.S. 479, 81 S.Ct. 247, 5 L.Ed.2d 231 (1960) (even if government's purpose is legitimate and substantial, that purpose cannot be achieved by overly broad means that stifle fundamental liberties when the desired goal can be achieved by more narrowly drawn means).

To prevail, the State must do more than merely assert that the statute is a rational means for accomplishing some significant state policy. The State must present evidence of the alleged connection. *Carey v. Population Services International,* 431 U.S. 678, 696, 97 S.Ct. 2010, 2022, 52 L.Ed.2d 675 (1977).

The speech at issue falls within none of the categories of unprotected speech set forth in *Chaplinsky.* The Court finds that the speech is protected speech. The proposed advertisement contains information about lawful services the plaintiff provides. The activity advertised pertains to constitutional interests. *See Roe v. Wade,* 410 U.S. 113, 93 S.Ct. 705, 35 L.Ed.2d 147 (1973); *Doe v. Bolton,* 410 U.S. 179, 93 S.Ct. 739, 35 L.Ed.2d 201 (1973). The fact that the speech in question is for profit does not remove that speech from the protection of the first amendment. *Pittsburgh Press Co. v. Pittsburgh Commission on Human Relations,* 413 U.S. 376, 384, 93 S.Ct. 2553, 2558, 37 L.Ed.2d 669 (1973); *Atlanta Cooperative News Project v. United States Postal Service,* 350 F.Supp. 234, 239 (N.D.Ga.1972). Because the speech is protected, the State must demonstrate a compelling state interest in its regulation.

The State does not argue that the challenged statute serves any compelling state interest, but merely argues that all state legislation is entitled to a strong presumption of constitutionality. The State has failed to demonstrate that the statute serves a compelling interest or that the statute is a reasonable means of furthering such an interest. Instead, the State argues that the plaintiff's speech may be regulated by the State because it is commercial speech. The State claims, without any support, that commercial speech may be suppressed in certain circumstances. The State does not describe what those circumstances are or even claim that the present case involves one of those circumstances.

The United States Supreme Court thoroughly reviewed the protections for and limitations on commercial speech in two recent cases. In *Bigelow v. Virginia,* 421 U.S. 809, 95 S.Ct. 2222, 44 L.Ed.2d 600 (1975), the Supreme Court held unconstitutional the application of a state statute which prohibited the publication or circulation of advertisements providing information encouraging or aiding the processing of an abortion. The Supreme Court held that the statute as applied to a publisher who published information in his newspaper concerning the availability of abortions in New York, infringed constitutionally protected speech. The Supreme Court specifically stated that commercial speech is protected by first amendment guarantees and that its commercial nature alone is no justification for narrowing its first amendment protections. 421 U.S. at 818, 95 S.Ct. at 2230. Speech involving solicitation for sales or other motives for financial gain is still protected speech. The Supreme Court also noted that the advertisement in *Bigelow* contained material of factual interest to the public and concerned legal activities. The Court added a caveat by stating commercial speech, like all public expression, may be reasonably regulated to serve a legitimate public interest. 421 U.S. at 819, 95 S.Ct. at 2231.

In *Virginia State Board of Pharmacy v. Virginia Citizens Consumer Council, Inc.,* 425 U.S. 748, 96 S.Ct. 1817, 48 L.Ed.2d 346 (1976), the Supreme Court reiterated in even stronger language that commercial speech is protected by first amendment guarantees. Specifically, the Court stated that speech is protected even though it involves a solicitation to purchase or otherwise pay or contribute money. 425 U.S. 761–762, 96 S.Ct. at 1825. The Supreme Court held that freedom of speech cannot be abridged on the grounds that the speaker's listeners could receive the same message by some other means. Although it struck down a state statute declaring it unprofessional conduct for a licensed pharmacist to advertise the prices of prescription drugs, the Supreme Court said that the state could regulate commercial speech which is false, deceptive, or misleading, or which proposes illegal transactions. In addition, the Court said that the state could regulate the time, place, and manner of the

communication if it furthered a significant governmental interest and if the restrictions were justified without reference to the content of the communication. The state could not, however, suppress the dissemination of truthful information about lawful activities merely because it feared the effect such information would have on its recipients.

The State in the present case does not contend that the challenged statute is designed to serve a legitimate state interest, such as the regulation of false, deceptive, or misleading information. Nor does the State claim that the type of advertisement in question affects the quality of medical services within the State. If the statute is designed to prevent illegal transactions,[3] an issue which the State fails to raise, the statute is overbroad since it prevents the dissemination of information concerning clearly legal activities. *See Roe v. Wade,* 410 U.S. 113, 93 S.Ct. 705, 35 L.Ed.2d 147 (1973); *Doe v. Bolton,* 410 U.S. 179, 93 S.Ct. 739, 35 L.Ed.2d 201 (1973). In addition, the statute is not a time, place, or manner restriction since it totally prohibits the publication of a message containing certain content. Thus, it is clear that the plaintiff's claim falls within the zone of interest protected by the first amendment and that the State has failed to articulate a compelling state interest that is served by the statute.

█ The Court's decision in no way limits the State's ability to regulate or even prohibit misleading or deceptive advertisements. Although truthful advertising related to lawful activities is entitled to first amendment protection, misleading advertisements or advertisements related to illegal activities may be totally banned. *In re R____ M. J____,* 455 U.S. 191, 102 S.Ct. 929, 937, 71 L.Ed.2d 64 (1982).

Since the material which plaintiff seeks to advertise contains matters of factual interest to the public and concerns legal activities, the Court finds that Minn.Stat. § 617.28 as it applies to the advertisement and publication of information concerning the inducement of miscarriages or abortions violates the first and fourteenth amendments of the U.S. Constitution.

Accordingly,

IT IS ORDERED that the plaintiff's motion for summary judgment is hereby granted.

LET JUDGMENT BE ENTERED ACCORDINGLY.

---

**3.** In *Mitchell Family Planning, Inc. v. City of Royal Oak,* 335 F.Supp. 738 (E.D.Mich.1972), the district court held that a municipal ordinance making it unlawful to advertise any means by which an abortion could be procured or any information concerning the procuring of an abortion was unconstitutionally overbroad since the statute failed to distinguish between legal and illegal abortions. *Id.* at 741–742. In *Atlanta Cooperative News Project v. The United States Postal Service,* 350 F.Supp. 234 (N.D. Ga.1972), the district court held that a federal statute prohibiting the mailing of any writing giving information directly or indirectly as to how, where, or from whom an abortion could be obtained, was unconstitutional as a prior restraint of protected first amendment communications.