**In the Matter of the Application of CROWN COCO, INC.**

**No. C5–90–142.**

Court of Appeals of Minnesota.

July 10, 1990.

Laura Jean Hanson, Charles E. Spevacek, Meagher & Geer, Minneapolis, for appellant Crown CoCo, Inc.

Hubert H. Humphrey, III, Minnesota Atty. Gen., Carolyn Ham, Sp. Asst. Atty. Gen., St. Paul, for respondent Petroleum Tank Release Compensation Bd.

Considered and decided by GARDEBRING, P.J., and NORTON and MULALLY *, JJ.

## OPINION

GARDEBRING, Judge.

Appellant Crown CoCo, Inc. seeks review of a decision by the Minnesota Petroleum Tank Release Compensation Board which denied reimbursement of costs incurred to clean up a gasoline leak. The Board's decision to deny reimbursement was based on the fact that Crown CoCo's insurance company had already paid for the cleanup costs. We reverse.

## FACTS

Crown CoCo (Crown) owns and operates several petroleum service stations in Minnesota. Crown is insured under a pollution liability policy issued by Federated Mutual Insurance Company. The policy provides $100,000 in cleanup coverage and $300,000 in general liability coverage, with no deductible.

On March 15, 1986, an underground tank at one of Crown's service stations leaked gasoline. Crown reported the release to the Minnesota Pollution Control Agency (MPCA), and prepared a plan for corrective action. The plan was approved by the MPCA, and Crown took reasonable and necessary corrective action to clean up the leak. Crown was reimbursed by Federated Mutual for the cost of the cleanup actions.

In October 1989, Crown applied to the Minnesota Petroleum Tank Release Com-

---

* Acting as judge of the Court of Appeals by appointment pursuant to Minn.Const. art. VI, § 2.

pensation Board (Petrofund Board) for reimbursement of the costs incurred in cleaning up the leak. Crown was informed by telephone that it was the Petrofund Board's policy not to reimburse cleanup costs already covered by insurance. Crown requested a formal determination to this effect.

At a meeting on December 4, 1989, the Petrofund Board considered Crown's application for reimbursement. The Board decided to deny reimbursement because Crown had incurred no eligible costs which were not covered by insurance.

The Petrofund Board issued its final resolution denying reimbursement on December 15, 1989. The resolution was mailed to Crown on January 4, 1990.

Crown CoCo thereupon brought this timely appeal.

### ISSUES

1. Does Crown have standing to pursue this appeal?

2. Did the Petrofund Board have the authority to determine whether insured costs are eligible for reimbursement from the fund?

3. Did the Petrofund Board err by failing to follow rulemaking procedures pursuant to the Administrative Procedure Act?

4. Did the Petrofund Board's decision violate Crown's rights to equal protection?

5. Did the Petrofund Board err by failing to notify Crown of its decision within the time limits required by agency rule?

### ANALYSIS

#### I.

Minnesota's Petroleum Tank Release Cleanup Act, Minn.Stat. ch. 115C, was enacted in 1987. As its name implies, the Act governs liability and procedures for releases of petroleum into the environment, and establishes a fund for reimbursement of cleanup costs for such spills.

The Act creates a Petroleum Tank Release Compensation Board (Petrofund Board), which is responsible for adopting rules governing the administration of the fund, including the determination of which costs are eligible for reimbursement from the fund. Minn.Stat. § 115C.07, subd. 3 (1988). The Petrofund Board provides partial reimbursement to eligible "responsible persons" for reimbursable costs incurred after June 4, 1987. Minn.Stat. § 115C.09, subd. 1 (Supp.1989). A "responsible person" is defined as an "owner or operator of the tank at any time during or after the release." Minn.Stat. § 115C.021 (1988).

The Act provides for reimbursement of 90 percent of corrective action costs less than $250,000. Minn.Stat. § 115C.09, subd. 3 (Supp.1989). Before reimbursement, the Petrofund Board must determine that the corrective action costs were both actually incurred and reasonable. Minn.Stat. § 115C.09, subd. 3. Agency rules promulgated to implement the Act provide:

> The board shall determine the amount of the reimbursement based on those costs it finds are eligible, actually incurred, and reasonable.

Minn.R. 2890.0100, subpt. 3.

Crown argues that the Petrofund Board erred by denying reimbursement on the basis that its cleanup costs were covered by insurance. The Petrofund Board argues Crown lacks standing to raise this argument, because it was not injured by the Board's decision.

█ Under the standing requirement, a party must show "that he personally has suffered some actual or threatened injury as a result of the putatively illegal conduct of the defendant" and that the injury "fairly can be traced to the challenged action" and "is likely to be redressed by a favorable decision." *Meadowbrook Women's Clinic, P.A. v. State of Minnesota*, 557 F.Supp. 1172, 1174 (D.Minn.1983) (quoting *Valley Forge Christian College v. Americans United for Separation of Church and State, Inc.*, 454 U.S. 464, 102 S.Ct. 752, 70 L.Ed.2d 700 (1982)). Economic injury or the prospect of economic injury may be sufficient to establish standing. *Meadowbrook*, 557 F.Supp. at 1175.

█ We conclude Crown has standing to bring this action. Crown's aggregate in-

surance limits were reduced when its insurance company paid for the cleanup costs. Should the Petrofund Board provide reimbursement, Crown may reinstate its aggregate insurance limits. If Crown is not reimbursed, however, any potential future liability may not be covered by either Crown's reduced insurance limits or the Petrofund account, which provides reimbursement for only certain designated costs.

Crown also claims that if insureds are determined eligible to receive payment from the Petrofund, pollution liability insurance premiums will be reduced. This argument is supported by affidavits submitted by Crown's insurer. *See Meadowbrook,* 557 F.Supp. at 1176 (court considered affidavits by a third party when determining the issue of standing.)

We also note that Minn.Stat. § 115C.08, subd. 3 (Supp.1989), imposes upon Crown a fee for the use of its tanks. The fee is paid to the Petrofund account to reimburse responsible parties. Therefore, if Crown's insured cleanup costs are not reimbursed from the Petrofund, it will suffer economic injury, since it has made a payment for which it receives no benefit.

For the above reasons, we conclude Crown has standing to bring this appeal.

## II.

■ Crown argues the Petrofund Board exceeded its statutory authority when it determined that cleanup costs reimbursed by insurance are not also reimbursable from the Petrofund account.

> Jurisdiction of an administrative agency consists of the powers granted it by statute. Lack of statutory power betokens lack of jurisdiction. It is therefore well settled that a determination of an administrative agency is void and subject to collateral attack where it is made either without statutory power or in excess thereof.

*State by Spurck v. Civil Service Board,* 226 Minn. 253, 259, 32 N.W.2d 583, 586 (1948).

Although an agency's decision is entitled to some deference where statutory language is technical and the agency has applied a longstanding interpretation, *Arvig Telephone Co. v. Northwestern Bell Telephone Co.,* 270 N.W.2d 111, 114 (Minn. 1978), when an agency's authority to act is called into question, this court may independently review the enabling statute; we need not defer to agency expertise. *Frost–Benco Electric Association v. Minnesota Public Utilities Commission,* 358 N.W.2d 639, 642 (Minn.1984).

The legislature has mandated that the Petrofund Board "adopt rules * * * specifying the costs that are eligible for reimbursement from the fund." Minn.Stat. § 115C.07, subd. 3. The Board has in fact adopted rules specifying other eligible and ineligible costs. *See* Minn.R. 2890.0070; 2890.0080 (1989). The Petrofund Board therefore had the statutory authority to determine whether insured costs are eligible for reimbursement from the fund.

## III.

■ Crown argues further that, even if the Board has statutory authority to deny reimbursement for insured costs, such authority may be exercised only pursuant to a rule promulgated under the provisions of Minn.Stat. ch. 14 (1988), the Minnesota Administrative Procedure Act (APA). Because such procedures were not followed in this matter, Crown argues that the Board's decision is an invalid "rule." We agree.

An agency may formulate policy by promulgating rules or on a case-by-case basis. *Matter of Hibbing Taconite Co.,* 431 N.W.2d 885, 894 (Minn.App.1988). A case-by-case determination of policy may be made "based on facts as applied to a specific party." *Id.* (citing *Bunge Corp. v. Commissioner of Revenue,* 305 N.W.2d 779, 784 (Minn.1981)).

A "rule", on the other hand, is defined as follows:

> "Rule" means every agency statement of general applicability and future effect * * * adopted to implement or make specific the law enforced or administered by

it or to govern its organization or procedure.

Minn.Stat. § 14.02, subd. 4 (Supp.1989).

Here the decision challenged by appellant does not involve the application of specific facts to specific parties; rather, the Petrofund Board's policy is to deny reimbursement to any responsible persons whose cleanup costs are already covered by insurance. Therefore, the Board's policy determination to make insured costs non-reimbursable does not come within the exception for case-by-case determinations. It is plainly a policy of "general applicability and future effect," and therefore, comes within the definition of a "rule" under Minn.Stat. § 14.02, subd. 4.

■ We have recognized an exception to the requirement that a policy of general applicability and future effect be manifested in a rule:

If an interpretation is consistent with the plain meaning of the statute or rule, the agency's action is authorized by the statute itself * * *.

*Good Neighbor Care Centers, Inc. v. Minnesota Department of Human Services,* 428 N.W.2d 397, 402–3 (Minn.App.1988) (citing *In re Peoples Natural Gas Co.,* 389 N.W.2d 903, 906 (Minn.1986)), *pet. for rev. denied* (Minn. Oct. 18, 1988). The Petrofund Board argues its interpretation of the statutory term "costs" comes within this exception and is therefore not an improper promulgation of a new rule. We disagree.

The exception is limited to circumstances where an agency's interpretation is consistent with the "plain meaning" of the implemented statute or rule. Here, the Petrofund Board's definition of the statutory term "costs" limits that term by excluding costs that have been reimbursed by insurance. We cannot conclude that the plain meaning of the statutory term "costs" excludes costs already covered by insurance.[1]

■ The courts have recognized another exception to APA rulemaking requirements where a law is ambiguous and the agency's interpretation is longstanding. *See Cable Communications Board v. Nor–West Cable Communications Partnership,* 356 N.W.2d 658, 667 (Minn.1984) (citing *White Bear Lake Care Center, Inc. v. Minnesota Department of Public Welfare,* 319 N.W.2d 7, 8 (Minn.1982)). The Petrofund Board argues that the term "costs" is ambiguous, and that its interpretation excluding insured costs from reimbursement is longstanding. We disagree. While the term "costs" may be considered ambiguous in the present context, we do not find the Petrofund Board's interpretation of such term to be "longstanding", in light of the recent establishment of the Petrofund Act.

■ The Petrofund Board argues that even if its interpretation of the term "costs" constitutes an improperly promulgated rule, its interpretation is valid and therefore should be upheld. The Board cites *Peoples,* where the court stated:

That [the agency] may have articulated its construction of a statute in a rule improperly promulgated does not render a correct interpretation incorrect.

*Peoples,* 389 N.W.2d at 906. Similarly, in *Good Neighbor,* the court stated:

[T]he agency's action is authorized by the statute itself, and the fact that no rule was promulgated does not render that interpretation invalid, although it does not have the force and effect of law.

*Good Neighbor,* 428 N.W.2d at 403.

The Board misapplies the rulings of *Peoples* and *Good Neighbor.* In *Peoples,* the agency's action fell within the case-by-case exception to the APA rulemaking requirements. The court explained:

The [policy] statement expressly notes that in each case the policy set out in the statement will merely provide the starting point for deliberation, "but the final

---

1. The legislative history of the Act reveals that the legislature did not consider whether insured costs should be reimbursed by the fund. Rather, it was assumed that upon establishment of the Petrofund, insurance companies would be more willing to write policies covering those costs that were not reimbursable by the fund. Hearings on H.F. 606 Before the Committee on Environment and Natural Resources, April 2, 1987 (statement of Mike Robertson, Deputy Director Minnesota Pollution Control Agency).

decision will depend upon the facts of the case".

*Peoples*, 389 N.W.2d at 906. In the present case, as noted above, the Petrofund Board's action does not come within the case-by-case exception to rulemaking.

In *Good Neighbor*, also, the court determined that the agency's action came within an exception to APA rulemaking requirements, because the agency's interpretation was consistent with the plain meaning of the implemented statute. Here, as discussed above, the Petrofund Board's action was not consistent with the plain meaning of the act.

Because the Board's action does not come within any exception to APA rulemaking requirements, its decision cannot be upheld absent compliance with APA rulemaking procedures.

■ We note that ideally, important questions concerning responsibilities for environmental cleanup costs should be addressed by the legislature. The legislature has, however, delegated to the Petrofund Board the responsibility for promulgating rules specifying eligible, reimbursable costs. Where important questions of social and political policy are involved, the rulemaking process must be followed. *Hibbing Taconite*, 431 N.W.2d at 894; *McKee v. Likins*, 261 N.W.2d 566, 578 (Minn.1977). As the court stated in *McKee:*

> If the legislature has placed the issue in the hands of an administrative official that official's decision ought to be based on a careful expression of all interested viewpoints.

*McKee*, 261 N.W.2d at 578.

### IV.

■ Crown alleges that the Petrofund Board's refusal to reimburse persons who are already insured violates its right to equal protection.

An economic classification will be upheld if it is rationally related to a legitimate government objective. *See Cleburne v. Cleburne Living Center*, 473 U.S. 432, 440, 105 S.Ct. 3249, 3254, 87 L.Ed.2d 313 (1985); *State by Spannaus v. Hopf*, 323 N.W.2d 746, 753 (Minn.1982) (citing *Davis v. Davis*, 297 Minn. 187, 189–90, 210 N.W.2d 221, 224 (1973)). In *Borman's v. Michigan Property & Casualty Guaranty Association*, 717 F.Supp. 468 (E.D.Mich.1989), the court explained:

> Application of the rational basis test requires an analysis of the purpose of the legislation in question, and a determination of whether the classification contained in that legislation bears a rational relationship to its purpose.

*Id.* at 477 (citation omitted).

The record contains at least two rational bases supporting the Petrofund's denial of reimbursement to responsible persons who are already insured. First, to reimburse persons who are already insured would result in either a double recovery by persons responsible for the cleanup or their insurers, who may collect premiums and also be reimbursed by the Board.

Second, as the Board notes, the Act was intended to provide an incentive to responsible persons to clean up releases of petroleum into the environment. No such incentive is necessary where responsible persons are already insured for the damage. In light of the limited funds available to reimburse responsible persons, we agree the Petrofund Board's classification bears a rational relationship to the purpose of the Act.

### V.

■ The Board considered and ruled on Crown's application at its December 4, 1989 meeting, and prepared a written resolution on December 18, 1989. The Board's decision was mailed to Crown on January 4, 1990. Crown argues the Petrofund Board exceeded its authority by failing to notify Crown of its decision within ten days, as required by Minn.R. 2890.0100, subpt. 3 (1989).

There is no penalty in Minn.R. 2890.0100, subpt. 3 for failure to comply with its provisions; therefore, we construe the language as directory only. *See Sullivan v. Credit River Township*, 299 Minn. 170, 176, 217 N.W.2d 502, 507 (1974). In addition, we note Crown has suffered no preju-

dice by the Board's delay, since the time for appeal from an order is governed by the date of service by an adverse party. Minn.R.Civ.App.P. 104.01.

## DECISION

The Petrofund Board had the authority to promulgate rules denying reimbursement to responsible persons for eligible costs already covered by insurance. In the absence of properly promulgated rules, however, the Board erred by refusing to reimburse Crown for its eligible costs.

Reversed.