**BEN OEHRLEINS AND SONS AND DAUGHTER, INC., Dick's Sanitation, Elk River Landfill, Inc., Gallagher's Service, Inc., Knutson Services, Inc., Randy's Sanitation, Inc., Poor Richard's, Inc., Vasko Rubbish Removal, Inc., Wasteco, Inc. and Waste Systems Corp., Plaintiffs,**

v.

**HENNEPIN COUNTY, MINNESOTA, Defendant.**

Civ. No. 4–94–63.

United States District Court,
D. Minnesota,
Fourth Division.

Nov. 1, 1994.

**1432**

Robert E. Cattanach, B. Andrew Brown, Alexandra B. Klass, and Dorsey & Whitney, Minneapolis, MN, for plaintiffs.

Charles N. Nauen, Robert J. Schmit, William A. Gengler, and Schatz Paquin Lockridge Grindal & Holstein, and Michael O. Freeman, Hennepin County Atty., Toni A. Beitz, Sr. Asst. County Atty., and Lon M. Erickson, Asst. County Atty., Minneapolis, MN, for Hennepin County.

## ORDER

DOTY, District Judge.

This matter is before the court on defendant's motion to dismiss. Based on a review of the file, record and proceedings herein, and for the reasons stated below, defendant's motion to dismiss is granted in part and denied in part.

## BACKGROUND

Hennepin County ("County"), a political subdivision of the State of Minnesota, owns and operates a mass-burn incinerator which it built as an alternative for disposal of municipal solid waste. The cost of building the incinerator was nearly $129 million. Plaintiffs are Minnesota and Iowa businesses involved in transporting and disposing of municipal solid nonhazardous wastes. Plaintiffs brought this action seeking a declaration that two waste management ordinances enacted by the County, Ordinances 12 and 15, are unconstitutional.[1] Among other things, plaintiffs contend that the ordinances impermissibly regulate the flow of solid waste gen-

erated in the County in violation of the Commerce Clause. The County moves to dismiss the action.

### 1. Ordinance 12

On December 10, 1985, the County enacted Ordinance No. 12 pursuant to Minn.Stat. § 115A.80, *et seq.* Ordinance 12 is a flow control measure which requires the delivery of "designated waste" generated within Hennepin County "to a Designated Facility and to the final destination point as directed by the County." The County designated two facilities for processing and disposal of waste generated in Hennepin County: the Hennepin County incinerator and the Elk River Resource Recovery Facility. The County further designated two transfer stations to receive solid waste generated in the County prior to ultimate disposal.

Ordinance 12 took effect on June 1, 1989. The ordinance required that all County waste be disposed of at one of the two designated metropolitan landfills. The County also required the landfills to charge a $75 per ton disposal fee. Beginning January 1990, the County required that all County waste be disposed of within its proprietary waste disposal facilities, primarily the incinerator, for a disposal or tipping fee of $95 per ton. At the time, alternative disposal facilities, including facilities outside Minnesota, charged substantially lower tipping fees. Failure to comply with Ordinance 12 subjects waste haulers to license revocation, civil fines and criminal prosecution. Plaintiffs complied with Ordinance 12 and disposed of County waste at County facilities and paid the inflated tipping fee.

As enacted, Ordinance 12 applied to all waste generated in Hennepin County regardless of where it was destined for disposal. Thus, as written, the ordinance forbid the disposal of County waste at facilities outside Minnesota and prevented out-of-state facilities from competing for waste disposal services. The County has not pursued enforcement actions based on that aspect of Ordi-

---

1. By order dated June 21, 1994, the court held that it lacked jurisdiction to consider the constitutionality of Ordinance 15 because it imposes a tax within the meaning of the Tax Injunction Act

and the relief sought by plaintiffs sought to restrain the assessment, levy and collection of that tax.

nance 12 and, in December 1993, passed a resolution suspending enforcement actions relating to County waste destined for disposal outside Minnesota. The County still requires that waste generated in Hennepin County destined for disposal in Minnesota be disposed at a designated facility, namely the incinerator.

## 2. Ordinance 15

Although plaintiffs' challenge to Ordinance 15 is no longer before the court, a description of that ordinance helps complete the factual setting. On November 30, 1993, the County enacted Ordinance No. 15 pursuant to Minn. Stat. §§ 400.08 and 473.811, subd. 3a. Ordinance 15 imposes a solid waste management fee on all waste generated in the County. At the same time, the County passed resolutions which reduced the County's tipping fee from $95 per ton to $60 per ton. The solid waste management fee is imposed on all County waste regardless of where it is disposed. As a condition of license, waste haulers must bill and collect the solid waste management fee from both residential and nonresidential waste generators and remit it to the County. The County may revoke or suspend the license of waste haulers who fail to comply with Ordinance 15.

The County began assessing the solid waste management fee on January 1, 1994. The stated purpose of the solid waste management fee is to fund County environmental programs designed to protect the health and welfare of County citizens. Plaintiffs contend, however, that the County devised the solid waste management fee as a direct response to the exportation of County waste to out-of-state facilities. Plaintiffs assert that the fee is a regulatory measure designed to designate the disposal of all County waste to County disposal facilities by subsidizing the incinerator and other County facilities.

## DISCUSSION

■ The present motion was styled as a motion to dismiss and the court treats it as such. A motion to dismiss for failure to state a claim tests the sufficiency of the complaint.

*Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974). When analyzing a motion to dismiss, the court looks to the complaint as pled. The complaint must be liberally construed and viewed in the light most favorable to the plaintiff. The court will dismiss a complaint only when it appears the plaintiff cannot prove any set of facts that supports the claim. *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–102, 2 L.Ed.2d 80 (1957).

## 1. Commerce Clause Claim

■ The parties initially dispute whether the court should look to Ordinance 12 as originally enacted or as enforced by the County. Plaintiffs assert that the court should focus on Ordinance 12 as originally adopted; the County responds that the court should consider the ordinance as enforced. It cannot be seriously disputed that Ordinance 12 as originally enacted would fail in light of the Supreme Court's recent decision in *C & A Carbone, Inc. v. Clarkstown,* — U.S. ——, 114 S.Ct. 1677, 128 L.Ed.2d 399 (1994). In December 1993, however, the County passed a resolution suspending enforcement actions relating to County waste destined for disposal outside Minnesota.[2] The County argues that the constitutional issue concerning the restrictions placed on waste destined for out-of-state disposal is rendered moot by the resolution.

The court agrees with the County that the constitutionality of Ordinance 12 is properly addressed to the ordinance as enforced. Ordinance 12 does not, on its face, impose restrictions on the out-of-state disposal of County waste. The County contends that the dormant Commerce Clause is not implicated because Ordinance 12 regulates only intrastate commerce and in no way impedes the free flow of interstate commerce. Plaintiffs respond that the County's flow control ordinance discriminates against and impermissibly burdens interstate commerce.

■ The dormant Commerce Clause forbids States and their political subdivisions from regulating interstate commerce.

2. The County, apparently hoping that new federal legislation would authorize such a restriction, did not expunge the reference in Ordinance 12 to waste destined for disposal outside Minnesota.

Courts have generally distinguished between two types of impermissible regulations. A regulation which on its face or in practical effect clearly discriminates against interstate commerce and a regulation which, although facially nondiscriminatory, impermissibly burdens interstate commerce. *See, e.g., Carbone,* —— U.S. at ——, 114 S.Ct. at 1688 (O'Connor, J., concurring). "In either situation the critical consideration is the overall effect of the [regulation] on both local and interstate activity." *Brown–Forman Distillers Corp. v. New York State Liquor Authority,* 476 U.S. 573, 579, 106 S.Ct. 2080, 2084, 90 L.Ed.2d 552 (1986).

■ Viewing the complaint in favor of plaintiffs, the court cannot conclude at this time that no set of facts can be proven which would entitle plaintiffs to relief. The service of processing and disposing of solid waste is an article of commerce. *Carbone,* —— U.S. at ——, 114 S.Ct. at 1682. In *Carbone,* the Supreme Court held that economic effects which were interstate in reach brought a flow control ordinance within the purview of the Commerce Clause. *Id.* at ——, 106 S.Ct. at 1681. Applying the generous standard governing dismissal of a claim, the court cannot conclude that plaintiffs can prove no set of facts which would establish that Ordinance 12 implicates the dormant Commerce Clause and contravenes it by impermissibly burdening interstate commerce. Accordingly, the court denies the County's motion to dismiss the Commerce Clause claim.

## 2. Standing

■ The County asserts that plaintiffs lack standing to challenge the constitutionality of Ordinance 12. To establish standing, plaintiffs must satisfy a three-part test: (1) plaintiffs must have suffered an injury in fact, economic or otherwise, (2) there must be a causal connection between plaintiffs' injuries and the County's conduct, and (3) a favorable decision in the case must be likely to redress plaintiffs' injuries. *Lujan v. Defenders of Wildlife,* —— U.S. ——, ——, 112 S.Ct. 2130, 2136, 119 L.Ed.2d 351 (1993). The County argues that plaintiffs have failed to demonstrate the required injury in fact.

■ To survive a motion to dismiss based on a lack of standing, plaintiffs need only state "general factual allegations of injury resulting from defendant's conduct ... for on a motion to dismiss [the court] 'presume[s] that general allegations embrace those specific facts which are necessary to support the claim.'" *Id.* at ——, 112 S.Ct. at 2137 (quoting *Lujan v. National Wildlife Federation,* 497 U.S. 871, 889, 110 S.Ct. 3177, 3189, 111 L.Ed.2d 695 (1990)). At the pleading stage, plaintiffs may establish an injury in fact by alleging an invasion of a legally-protected interest which is concrete, particularized, actual and imminent. *Id.,* —— U.S. at ——, 112 S.Ct. at 2136. It is well established "that economic injury or the prospect of economic injury can satisfy the injury in fact requirement." *Meadowbrook Women's Clinic v. Minnesota,* 557 F.Supp. 1172, 1175 (D.Minn.1983).

■ All plaintiffs allege they have suffered and continue to suffer economic injury as a result of the impermissible burden Ordinance 12 places on interstate commerce. The majority of plaintiffs are haulers who transport solid waste generated in the County. The haulers allege, among other things, that Ordinance 12 forced them to forego alternative disposal facilities and pay the County's inflated fees. Plaintiff Elk River Landfill, Inc., is a waste disposal facility located in Minnesota; plaintiff Waste Systems Corp. is a waste disposal facility located in Iowa. Both facilities charge tipping fees substantially lower than the County. Elk River and Waste Systems allege they would have received more County waste for disposal but for Ordinance 12. The court holds that the allegations pled suffice to establish, for present purposes, that plaintiffs have standing to challenge Ordinance 12.

## 3. Substantive Due Process Claim

■ The County asserts that plaintiffs fail to state a cognizable substantive due process claim. Plaintiffs allege that their due process rights were violated because the County acted arbitrarily and capriciously in threatening to enforce Ordinance 12 as to County waste destined for disposal outside Minnesota after federal courts invalidated

similar flow control ordinances.[3] In *Waste Systems Corp. v. County of Martin,* the federal district court declared unconstitutional two designation ordinances that mandated all compostable wastes generated in Martin and Faribault counties be disposed at a waste composting facility owned and operated by the counties. 784 F.Supp. 641, 644–45 (D.Minn.1992), *aff'd,* 985 F.2d 1381 (8th Cir. 1993).

Like Ordinance 12 as enacted, the designation ordinances in *Waste Systems* applied to all waste generated in the counties and effectively forbid the disposal of such waste at facilities outside Minnesota and prevented out-of-state facilities from competing for waste disposal services. The district court's decision was rendered on February 14, 1992, and was affirmed by the Eighth Circuit on February 18, 1993. It was not until December 22, 1993, that the County announced it would not enforce Ordinance 12 to bar the transport of County waste across state lines. In the interim, plaintiffs were forced to choose between complying with Ordinance 12 as written or risking fines, license revocation and possible prosecution.

The County asserts that it was not irrational to enforce Ordinance 12 before the Supreme Court provided guidance on the commerce clause issue. It may be, as the County contends, that plaintiffs ultimately may fail to prove that the County acted irrationally and arbitrarily. The court cannot say at this time, however, that plaintiffs can prove no set of facts which would establish that the County violated their due process rights. The court concludes that plaintiffs have adequately pled a due process violation and, accordingly, denies the County's motion to dismiss that claim.

### 4. Federal Antitrust Claim

Plaintiffs allege that the County's waste designation requirements violate the Sherman Act. Plaintiffs accuse the County of monopolizing and attempting to monopolize the disposal of solid waste for the incinerator. The County responds that the state action exemption shields its allegedly anticompetitive conduct from attack under the federal antitrust laws.

The Sherman Act, 15 U.S.C. § 1, *et seq.,* prohibits only individual and not state action. *Parker v. Brown,* 317 U.S. 341, 352, 63 S.Ct. 307, 314, 87 L.Ed. 315 (1943). The state action shield extends to municipalities that engage in anticompetitive conduct "pursuant to state policy to displace competition with regulation or monopoly public service." *City of Lafayette v. Louisiana Power & Light Co.,* 435 U.S. 389, 413, 98 S.Ct. 1123, 1137, 55 L.Ed.2d 364 (1978) (plurality opinion). Before invoking the protection of the state action exemption, the County must establish that it is engaging in the challenged activity pursuant to a "clearly articulated and affirmatively expressed" state policy. *Town of Hallie v. City of Eau Claire,* 471 U.S. 34, 44, 105 S.Ct. 1713, 1719, 85 L.Ed.2d 24 (1985).

The County asserts that the Minnesota Waste Management Act, Minn.Stat. § 115A.01, *et seq.,* authorizes anticompetitive conduct with respect to waste disposal facilities. The Act authorizes counties to designate a solid waste processing or disposal facility. Minn.Stat. § 115A.80. The Act defines "designation" as:

> a requirement by a ... county that all or any portion of the solid waste that is generated within its boundaries ... be delivered to a processing or disposal facility identified by the ... county.

*Id.* § 115A.81, subd. 2. The Act also specifies a designation procedure which a county must follow before adopting any ordinance identifying a facility. *Id.* §§ 115A.84–86. This grant of authority is supplemented by Minn.Stat. § 400.01, *et seq.,* which delegates to counties primary authority for solid waste management.[4] The statute authorizes counties to establish by ordinance rules, regulation and standards for the collection, process-

---

**3.** Plaintiffs also alleged in the complaint that their due process rights were violated because Ordinance 12 bears no rational relation to any legitimate public health, safety or welfare concern. Plaintiffs have abandoned this argument.

**4.** Minn.Stat. § 400.01 states that "it is in the public interest that counties conduct solid waste management programs."

ing and disposal of solid waste. *Id.* § 400.16.[5]

Plaintiffs contend that these statutory provisions do not evince a state policy to displace competition in the provision of waste disposal services because they do not expressly endorse anticompetitive conduct. The court disagrees. By empowering a county to require that "all or any portion" of the solid waste generated within its boundaries be delivered to a designated disposal facility, the legislative scheme clearly contemplates that a county may engage in anticompetitive conduct. It is not necessary, as plaintiffs contend, "for the state legislature to have stated explicitly that it expected [counties] to engage in anticompetitive effects." *Hallie*, 471 U.S. at 42, 105 S.Ct. at 1718. Rather it is sufficient that the state authorized counties to designate a solid waste disposal facility for solid waste generated within their boundaries. It is obvious that anti-competitive effects would result from such a broad grant of authority to regulate the disposal of solid waste. *Accord Hallie*, 471 U.S. at 42, 105 S.Ct. at 1718.

Plaintiffs also assert that the Minnesota statutes do not evidence a clearly expressed state policy because they do not compel or require a county to designate a waste disposal facility. Compulsion by the State is not necessary "to a finding that a municipality acted pursuant to a clearly articulated state policy." *Id.* at 46, 105 S.Ct. at 1720. The statutory provisions clearly show that the legislature contemplated the kind of action plaintiffs complain of. The statutory scheme for solid waste management exhibits a "clearly articulated and affirmatively expressed" state policy to displace competition with regulation in the area of municipal provision of solid waste disposal services. The court concludes that the County's allegedly anticompetitive conduct is exempt from the federal antitrust laws under the state action doctrine. Accordingly, the court grants the County's motion to dismiss the federal antitrust claim.

### 5. Minnesota Antitrust Claim

■ The court also holds that the County is immune from state antitrust liability under the terms of the Minnesota Antitrust Act. The Act provides that it does not apply:

> to actions or arrangements otherwise permitted, or regulated by any regulatory body or officer acting under statutory authority of this state or the United States.

Minn.Stat. § 325D.55, subd. 2. The Minnesota Supreme Court has held that this exemption from antitrust liability applies to activities that are required or specifically permitted by the government. *Minnesota–Iowa Television v. Watonwan Television Improvement Ass'n*, 294 N.W.2d 297, 306 (Minn. 1980). Having concluded that the County's allegedly anticompetitive conduct is specifically authorized by state statute, the court grants the County's motion to dismiss the state antitrust claim.

### 6. Timeliness of Challenge to Ordinance 12

#### A. Section 1983 Claim

■ The County contends that plaintiffs' section 1983 claims are subject to the two year limitations period in Minnesota Statute § 541.07(1). That provision governs the limitations period for intentional torts and medical malpractice actions. Actions for torts not elsewhere enumerated are governed by the residuary clause of section 541.05, subd. 1(5). *See, e.g., Forsythe v. City of South St. Paul*, 177 Minn. 565, 567–68, 225 N.W. 816, 817 (1929). The residual limitations period for personal injury actions is six years. Plaintiffs contend that the six year period applies to their section 1983 claim.

Congress failed to provide a specific statute of limitations to govern section 1983 actions. In *Wilson v. Garcia*, the Supreme Court held that a State's personal injury statute of limitations should be applied to all section 1983 claims. 471 U.S. 261, 280, 105 S.Ct. 1938, 1949, 85 L.Ed.2d 254 (1985). The Court later stated that "where state law provides multiple statutes of limitations for personal injury actions, courts considering

---

**5.** The statute also provides that "[a] qualifying county may be authorized to designate a re-source recovery facility under §§ 115A.80 to 115A.89." Minn.Stat. § 400.162.

§ 1983 claims should borrow the general or residual statute for personal injury actions." *Owens v. Okure*, 488 U.S. 235, 249–50, 109 S.Ct. 573, 581–82, 102 L.Ed.2d 594 (1989). The Court expressly rejected that the appropriate limitations period is that which the State assigns to certain enumerated intentional torts. *Id.* at 243–44, 109 S.Ct. at 578–79.

As noted above, Minnesota has a statute of limitations for certain enumerated torts and a residual statute for all other personal injury actions. Following *Wilson* Minnesota courts characterized section 1983 claims as personal injury actions sounding in intentional tort and applied the two year limitations period. In the wake of *Owens*, however, Minnesota courts have designated the six year period in Minn.Stat. § 541.05, subd. 1(5), as the applicable statutory limitations period for section 1983 claims. *Berg v. Groschen*, 437 N.W.2d 75, 77 (Minn.Ct.App.1989); *Simington v. Minnesota Veterans Home*, 464 N.W.2d 529, 530 (Minn.Ct.App.1990).[6] The court agrees that the six year limitations period found in Minnesota's residual statute for personal injury actions applies to section 1983 claims.

## B. Waste Management Act

The County also asserts that plaintiffs' claims are time barred under section 115A.87 of the Waste Management Act. That provision states:

> An action challenging a designation must be brought within 60 days of the approval of the designation by the reviewing authority.

Minn.Stat. § 115A.87.[7] The Metropolitan Council approved the County's designation on February 11, 1986.[8] Thus, the County reasons that plaintiffs were required to bring

the present action against Ordinance 12 no later than April 14, 1986. The argument is unavailing. The statute upon which the County relies does not, and indeed could not, create a limitations period for challenges to designation ordinances based on the United States Constitution.

### 8. Impact of Wasteco Bankruptcy Settlement Agreement

 The County argues that the claims of Wasteco, Inc. ("Wasteco") are barred by a bankruptcy settlement agreement dated December 11, 1992. Wasteco filed a petition for Chapter 11 bankruptcy in February 1992. The County filed a claim against Wasteco in excess of $5,000,000. The figure was based on various debts including claims for unpaid and avoided tipping fees. The parties agreed that the County would dismiss its claim against Wasteco in exchange for an unsecured claim of $4,200,000 in Wasteco's bankruptcy estate. The settlement also provided that Wasteco "will continue to operate in accordance with the applicable Hennepin County ordinances." The County asserts that this language unequivocally shows that Wasteco bargained away any right to challenge Ordinance 12 as well as any damage claims related to Ordinance 12.

The County argues that by agreeing to abide by the applicable County ordinances, Wasteco implicitly renounced any right it had to challenge the validity of Ordinance 12. The language relied on by the County, however, does not forfeit Wasteco's right to challenge Ordinance 12 on constitutional grounds. The provision is neither a release nor a waiver of claims and stands in marked contrast to the release of claims given by the County in the settlement agreement.[9] The court concludes that the bankruptcy settle-

---

6. *But see Mille Lacs Band of Chippewa Indians v. Minnesota*, 853 F.Supp. 1118, 1125–26 (D.Minn. 1994) (holding that the personal injury statute of limitations applicable to § 1983 claims is the two year period in Minn.Stat. § 541.07(1)).

7. Pursuant to the second paragraph of Minn. Stat. § 115A.87, plaintiffs must notify the attorney general for Minnesota of any action challenging the County's designation ordinance.

8. Ordinance 12 was amended on three occasions. The amendments were approved by the

Metropolitan Council on January 12, 1989, July 26, 1990, and March 14, 1994.

9. Paragraph 8 of the agreement provides "[t]he County will dismiss any pending claims or actions against the Debtor, and will agree to refrain from suing Debtor on any claims that have been or could have been raised against Debtor prepetition under applicable Hennepin County ordinances."

ment does not bar the claims asserted by Wasteco in this action.

## CONCLUSION

Based on the foregoing, **IT IS HEREBY ORDERED** that defendant's motion to dismiss the complaint is granted in part and denied in part. **IT IS FURTHER ORDERED** that counts VIII and IX, which are based on the federal and state antitrust laws, respectively, are dismissed with prejudice.