WASTE SYSTEMS CORP., an Iowa corporation, Plaintiff,

v.

COUNTY OF MARTIN, MINNESOTA, and County of Faribault, Minnesota, Defendants.

No. Civ. 3–91–0375.

United States District Court, D. Minnesota, Third Division.

Feb. 14, 1992.

Timothy R. Thornton, and Colleen V. Short, Briggs & Morgan, Minneapolis, Minn., for plaintiff.

Walter J. Duffy, Jr., and James R. Steffen, Faegre & Benson, Minneapolis, Minn., Lisa R. Tiegel, Asst. Minn. Atty. Gen., St. Paul, Minn., for defendants.

## MEMORANDUM AND ORDER

MAGNUSON, District Judge.

### INTRODUCTION

This matter is before the court on cross motions for summary judgment. The court has previously ruled on plaintiff's motion for a temporary restraining order and a preliminary injunction. By order dated June 19, 1991, this court granted plaintiff's motion for a temporary restraining order, thereby restraining the Counties from enforcing the Designation Ordinances until a hearing on a motion for a preliminary injunction could be held. By order dated August 8, 1991, this court denied plaintiff's motion for a preliminary injunction finding that plaintiff failed to prove that it was threatened with irreparable injury. For the following reasons plaintiff's motion for summary judgment on its Commerce Clause claim is granted. Defendants' motion for summary judgment on all plaintiff's claims is granted in part, and denied in part.

### BACKGROUND

The facts of this case have been set forth in the court's preliminary injunction order dated August 8, 1991. However, the court will reiterate some of the background facts and incorporate additional facts as they relate specifically to this motion.

Plaintiff Waste Systems is an Iowa corporation that has operated a landfill in Lake Mills, Iowa for over ten years. Approximately two-thirds of the waste generated in the County of Martin, Minnesota and the County of Faribault, Minnesota, (the Counties) is disposed of at the Waste Systems landfill. The Counties have built an $8,000,000 composting facility, known as the Prairie Land Solid Waste Composting Facility (Facility) in Truman, Minnesota.

To ensure an adequate supply of waste to the Facility, the Counties enacted Designation Ordinances, mandating the disposal of all wastes generated in the Counties at the Facility. The Designation Ordinances had an effective date of June 24, 1991. Waste Systems claims that the Designation

Ordinances interfere with its right to compete in interstate commerce in violation of the Commerce Clause, constitute an unlawful taking without just compensation in violation of the Fifth and Fourteenth amendments to the United States Constitution, deprive Waste Systems of substantive due process of law, violate Waste System's civil rights under 42 U.S.C. § 1983, and violate the due process clause of the Minnesota Constitution.

Plaintiff Waste Systems seeks summary judgment with respect to its Commerce Clause claim. Defendant Counties, on the other hand, seek summary judgment on all plaintiff's claims. The court addresses each of plaintiff's claims separately.

DISCUSSION

I. Waste Systems' Motion for Summary Judgment With Respect to the Commerce Clause Claim.

Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admission on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed.Rule of Civ.Proc. 56(c). Plaintiff and defendants agree there are no material issues of fact with respect to plaintiff's Commerce Clause claim and therefore are both moving for summary judgment. The court agrees and therefore resolution of the Commerce Clause claim by summary judgment is appropriate.

The Commerce Clause of the United States Constitution grants Congress the power "to regulate Commerce ... among the several States ..." Art. I, § 8, Cl. 3. The Commerce Clause not only grants Congress the authority to regulate commerce among the States, but also limits the power of the States to discriminate against interstate commerce. *Hughes v. Oklahoma,* 441 U.S. 322, 326, 99 S.Ct. 1727, 1731, 60 L.Ed.2d 250 (1979). The dormant Commerce Clause "prohibits economic protectionism—that is, regulatory measures designed to benefit in-state economic interests by burdening out-of-state competitors." *New Energy Co. of Indiana v.*

*Limbach,* 486 U.S. 269, 273, 108 S.Ct. 1803, 1807, 100 L.Ed.2d 302 (1988). On the other hand, the Supreme Court has recognized the right of states to adopt regulations designed to safeguard the health and safety of its people even though such regulation may incidentally burden interstate commerce. *City of Philadelphia v. New Jersey,* 437 U.S. 617, 624, 98 S.Ct. 2531, 2535, 57 L.Ed.2d 475 (1978).

The Supreme Court has identified three inquires that are relevant to determining whether state regulation imposes an impermissible burden on interstate commerce. They are:

(1) whether [it] regulates evenhandedly with only "incidental" effects on interstate commerce, or discriminates against interstate commerce either on its face or in practical effect;

(2) whether the [regulation] serves a legitimate local purpose; and, if so,

(3) whether alternative means could promote this local purpose as well without discriminating against interstate commerce. *Hughes,* 441 U.S. at 336, 99 S.Ct. at 1736.

In determining whether a governing body has exceeded its authority to regulate interstate commerce, the United States Supreme Court has applied two tests, depending on whether the regulation has burdened commerce incidentally or directly. *Maine v. Taylor,* 477 U.S. 131, 138, 106 S.Ct. 2440, 2447, 91 L.Ed.2d 110 (1986). A neutral regulation which imposes only an incidental burden on interstate commerce is valid as long as that burden is not "clearly excessive in relation to the putative local benefits" the regulation is designed to serve. *Maine v. Taylor,* 477 U.S. at 138, 106 S.Ct. at 2447 (quoting *Pike v. Bruce Church, Inc.,* 397 U.S. 137, 142, 90 S.Ct. 844, 847, 25 L.Ed.2d 174 (1970). On the other hand, a regulation that discriminates against interstate commerce by treating it less favorably than intrastate commerce violates the Commerce Clause unless it "advances a legitimate local purpose that cannot be adequately served by reasonable nondiscriminatory alternatives." *New Energy Co. of Ind. v. Limbach,* 486 U.S. 269,

278, 108 S.Ct. 1803, 1810, 100 L.Ed.2d 302 (1988). When the discrimination amounts to nothing more than "economic protectionism" by benefiting in-state economic interests at the expense of out-of-state competitors, the regulation is deemed unconstitutional per se. *Philadelphia v. New Jersey*, 437 U.S. at 624, 98 S.Ct. at 2535.

■ The burden to show discrimination rests on the party challenging the validity of the statute. However, once it is shown that the regulation discriminates against interstate commerce, it must be subjected to the "strictest scrutiny" and the burden falls on the State (Counties) to demonstrate both that the statute "serves a legitimate local purpose," and that this purpose could not be served as well by available nondiscriminatory means. *Taylor*, 477 U.S. at 138, 106 S.Ct. at 2447 (quoting *Hughes*, 441 U.S. at 336, 99 S.Ct. at 1736).

■ Initially, with respect to the case at bar, the interstate movement of solid waste is "commerce" within the meaning of the Commerce Clause. *Philadelphia v. New Jersey*, 437 U.S. at 622, 98 S.Ct. at 2534. In addition, the proscriptions of the Commerce Clause apply to restrictions on transporting items out of a state as well as into a state. *Hughes*, 99 S.Ct. at 1736–37. It does not matter that the State has shut the article of commerce inside the State in one case and outside the State in the other. *Philadelphia v. New Jersey*, 437 U.S. at 628, 98 S.Ct. at 2537–38.

■ The purpose of the regulation is not necessarily dispositive of whether a regulation incidentally burdens interstate commerce or impermissibly discriminates against it. A regulation serving a "protectionist" purpose is clearly invalid. *Philadelphia v. New Jersey*, 437 U.S. at 624, 98 S.Ct. at 2535 (cites omitted). However, the absence of such a purpose does not establish the regulation's validity because "the evil of protectionism can reside in legislative means as well as legislative ends." *Philadelphia*, 437 U.S. at 626, 98 S.Ct. at 2536.

■ Thus, the issue before this court is whether the Ordinances, requiring all compostable solid waste generated in the Counties be delivered to the Counties' waste facility, impermissibly discriminate against interstate commerce. Faced with a similar issue, the Rhode Island District Court held such an ordinance was impermissible under the Commerce Clause and thereby issued a preliminary injunction enjoining enforcement of the ordinance. *Stephen D. Devito, Jr. Trucking v. RISWMC*, 770 F.Supp. 775 (D.R.I.1991), *aff'd* 947 F.2d 1004 (1st Cir. 1991). The *Devito* court held that the regulation is "an essentially protectionist measure. Its immediate purpose and effect are to increase RISWMC's revenues by preventing commercially generated waste from being transported out of Rhode Island for disposal and requiring instead that it be deposited at the CLG." *Devito*, 770 F.Supp. at 781.

In *Devito*, the State Solid Waste Board established a regulation requiring all solid waste to be disposed of at a State owned solid waste facility. In striking down the regulation as an unconstitutional "protective measure", the *Devito* court found that the regulation was designed to "serve [the Solid Waste Board's] financial interests" and that the Solid Waste Board "candidly acknowledged that the regulation provides the money necessary to carry out its statutory mandated responsibilities." Further, the court found that the Solid Waste Board's regulation "overtly blocks the flow of interstate commerce at a state's border" which the Supreme Court has characterized as the "clearest example" of economic protectionism. *Devito*, at 781–782 citing *Philadelphia v. New Jersey*, 437 U.S. at 624, 98 S.Ct. at 2535. The facts in the case before this court are strikingly similar to those in *Devito*.

Similar to *Devito*, the Designation Ordinances were enacted as a protectionist measure to ensure the viability of the Counties' own waste facility. The Counties' express purpose for the Ordinances is to ensure the "successful operation" of the Facility. For example, the Designation Plans state, "[a] critical element in assuring both the reliability and financial security of [the Facility] is the commitment of a

long-term waste supply. Without an adequate supply of waste, [the Facility] cannot be financially successful" ... and "[w]ithout designation ... an instability in the waste supply would exist." The cost for disposal, or the "tipping fee", at the Facility is approximately $70 per ton, while plaintiff's landfill charges approximately $30 per ton. The Facility Director, Dennis Hanselman, admitted that the effects of the Ordinances are "to give the Prairieland facility a competitive advantage as it relates to Iowa facilities" and "for us [the Facility] to get all of the garbage." Most importantly, the Ordinances themselves state that designation is necessary "to assure the financial success of the facility."

The Counties were well aware that much of the Counties' waste traveled in interstate commerce. In fact, the Counties' Designation Plans specifically mentioned and considered Waste System's landfill and its competitive effect on Prairieland. Thus, it is clear that the Ordinances were put in place to generate revenues to support the facility at the expense of discriminating against interstate commerce.

The mere fact that the Ordinances apply to in-state as well as out-of-state interests does not prevent them from being denominated discriminatory. *Filiberto Sanitation, Inc. v. State of New Jersey*, 857 F.2d 913, 919 (1988) (citing *Hunt v. Washington State Apple Advertising Comm'n*, 432 U.S. 333, 350–52, 97 S.Ct. 2434, 2445–46, 53 L.Ed.2d 383 (1977)). Moreover, Commerce Clause protection has been applied equally to restrictions on interstate commerce imposed by counties, as well as those imposed by states. *Dean Milk Co. v. City of Madison*, 340 U.S. 349, 71 S.Ct. 295, 95 L.Ed. 329 (1951). *See also, BFI Medical Waste Systems, Inc. v. Whatcom County*, 756 F.Supp. 480, 485 (W.D.Wash.1991).

The Ordinances impose far more than an incidental burden on interstate commerce. The defendants concede that approximately 40% (10,400 tons) of the Counties' solid waste otherwise available in interstate commerce is barred from transport across the state line by the Ordinances. Roughly two-thirds of all waste generated in the

Counties was disposed of at Waste System's landfilling business before the Ordinances were enacted. Business from the Counties resulted in approximately $360,000 in tipping fees for Waste Systems.

Considering the Ordinances' burdens on commerce in light of local purposes and available alternatives, it is equally clear the Ordinances are invalid. The Ordinances establish a direct competitive advantage to the Prairieland Facility in that all tipping fee revenue goes directly to the Facility. That benefit is gained at the direct expense of out-of-state interests (Waste Systems) and interstate commerce itself which is totally eliminated. *See Devito*, at 770 F.Supp. 782.

The local purpose of insuring the financial viability of Prairieland is not the type of compelling purpose which permits interference with interstate commerce. Prairieland has expressed an ability to survive regardless of the tipping fee revenue. The court agrees. As an alternative, the Counties could offer competitive tipping fees to ensure that the necessary waste stream is available. The difference between the market tipping fee and the cost to run the Facility could be borne by the Counties. As the *Devito* court held, "while construction of a [composting facility] may be a legitimate local purpose, not every means of achieving that purpose is therefore legitimate." *Devito*, 770 F.Supp. at 785. The Prairieland Facility may be an improvement in local waste disposal, however, financing that "good idea" on the back of interstate commerce is improper. Therefore, this court finds the Designation Ordinances are invalid under the Commerce Clause.

## II. Defendant Counties' Motion for Summary Judgment on All Claims.

In addition to plaintiff's claim that the Ordinances violate the Commerce Clause, plaintiff also contends that the Ordinances (1) are infirm under the Due Process Clause of the United States Constitution, (2) constitute a taking of property without compensation in violation of the Fifth Amendment, (3) are infirm under the due

process clause of the Minnesota Constitution and (4) violate plaintiff's civil rights under 42 U.S.C. § 1983. Defendants move for summary judgment on all counts.

A. *Whether the Ordinances are infirm under Due Process Clause of the United States Constitution.*

Plaintiff seeks a permanent injunction enjoining enforcement of the Designation Ordinances under the Due Process Clause of the United States Constitution. The court has already found that the Designation Ordinances violate the Commerce Clause and therefore has enjoined enforcement of the Ordinances by the Counties. Accordingly, it is unnecessary to address the merits of plaintiff's due process claim.

B. *Whether the Ordinances constitute a taking in violation of the Fifth Amendment.*

Plaintiff charges the Designation Ordinances constitute a "taking" in violation of the Fifth Amendment to the United States Constitution. The court disagrees. To determine whether a governmental regulation constitutes a taking, courts examine three factors: (1) the economic impact of regulation on the claimant; (2) the extent to which the regulation has interfered with distinct investment-backed expectations; and (3) the character of the governmental action. *Connolly v. Pension Benefit Guar. Corp.*, 475 U.S. 211, 225, 106 S.Ct. 1018, 1026, 89 L.Ed.2d 166 (1986). Plaintiff could not reasonably have held an investment-backed expectation that the highly regulated waste disposal industry would not experience changes in regulatory legislation. "Those who do business in the regulated field cannot object if the legislative scheme is buttressed by subsequent amendments to achieve the legislative end." *Connolly*, 475 U.S. at 227, 106 S.Ct. at 1027 (cites omitted). Furthermore, the Counties actions, (i.e. enacting the Ordinances), are not of the nature that give rise to taking claims under the Fifth Amendment. The Counties here are not "physically invading" or "permanently appropriating" any of plaintiff's assets for their own use. *Connolly*, 475 U.S. at 225, 106

S.Ct. at 1026. Thus, defendants' actions do not amount to a "taking" within the meaning of the Fifth Amendment. Accordingly, defendants' motion for summary judgment with respect to plaintiff's "takings" claim is granted.

C. *Whether the Ordinances violate the due process clause of the Minnesota Constitution.*

Plaintiff seeks to enjoin the Counties from enforcing the Ordinances because they violate the due process clause of the Minnesota Constitution. The court has issued an injunction because the Ordinances have been found to violate the Commerce Clause of the United States Constitution. Thus, it is unnecessary to determine whether the Ordinances also violate the due process clause of the Minnesota Constitution. In any event, the court believes the plaintiff's state due process claim is without merit. Plaintiff relies on *Thompson v. County of Blue Earth*, 305 Minn. 438, 233 N.W.2d 770 (1975) where the Minnesota Supreme Court ruled that an ordinance restricting the flow of solid waste across county lines violated the Due Process Clause of the Minnesota Constitution. This decision, issued in 1975, was based on the fact that the County Solid Waste Management Act did not explicitly grant counties the power to prevent solid waste from leaving their boundaries. However, the Minnesota Legislature has since adopted Minn. Stat. 115A.80 *et seq.* explicitly authorizing such boundary restrictions. Accordingly, defendants' motion for summary judgment on plaintiff's due process clause under the Minnesota Constitution is granted.

D. *Plaintiff's § 1983 Claim.*

Plaintiff seeks damages with respect to the Counties' Designation Ordinances under 42 United States Code § 1983. § 1983 provides in pertinent part:

Every person who, under color of any statute, ordinance, regulation, custom, or usage of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdic-

tion thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

The Court has found that the Counties' Designation Ordinances violate the Commerce Clause. The United States Supreme Court recently ruled that Commerce Clause plaintiffs could proceed under § 1983. *Dennis v. Higgins,* — U.S. —, 111 S.Ct. 865, 872, 112 L.Ed.2d 969 (1991). Therefore, the court believes it is inappropriate to grant defendants' motion for summary judgment on plaintiff's § 1983 claim.

III. Damages.

Plaintiff seeks the following: (1) A judgment declaring the Designation Ordinances unconstitutional and invalid. (2) A permanent injunction restraining the Counties from enforcing the Designation Ordinances. (3) Damages in an amount equal to the tipping fees plaintiff lost due to "the Counties' unconstitutional Ordinances and threats of prosecution." (4) Punitive damages of $8,000,000. (5) Attorneys' fees and disbursements pursuant to 42 U.S.C. § 1988.

This court has found the Designation Ordinances in violation of the Commerce Clause and therefore has issued an injunction. However the court, at this time, declines to rule further with respect to damages. Rule 54(b), in pertinent part, provides:

When more than one claim for relief is presented in an action ... the court may direct the entry of a final judgment as to one or more but fewer than all of the claims ... only upon an express determination that there is no just reason for delay and upon an express direction for the entry of judgment.

Pursuant to Rule 54(b) and finding there is no just reason for delay, the court grants final judgment with respect to plaintiff's motion for summary judgment on its Commerce Clause claim. In addition, finding no just reason for delay, the court grants final judgment with respect to defendants' motion for summary judgment on plain-

tiff's civil rights claim under 42 U.S.C. § 1983 and plaintiff's due process claims under the Constitutions of the United States and the State of Minnesota.

Accordingly, IT IS HEREBY ORDERED that:

(1) Plaintiff's motion for summary judgment with respect to its claim that the Counties' Designation Ordinances violate the Commerce Clause of the United States Constitution is GRANTED (clerk dockets #34, #36, #43 and #44). Therefore, the Counties are permanently enjoined from enforcing the Designation Ordinances.

(2) Defendants' motion for summary judgment on plaintiff's civil rights claim under 42 U.S.C. § 1983 (clerk dockets #39 and #47) is DENIED.

(3) Defendants' motion for summary judgment on plaintiff's due process claim under the State of Minnesota Constitution is GRANTED.

(4) Defendants' motion for summary judgment with respect to plaintiff's "takings" claim in violation of the Fifth Amendment to the United States Constitution is GRANTED.

(5) Further, pursuant to Rule 54(b) and finding there is no just reason for delay, the court grants final judgment with respect to plaintiff's motion for summary judgment on its Commerce Clause claim. In addition, finding no just reason for delay, the court grants final judgment with respect to defendants' motion for summary judgment on plaintiff's civil rights claim under 42 U.S.C. § 1983, and plaintiff's due process claims under the Constitutions of the United States and the State of Minnesota and plaintiff's "takings" claim under the Fifth Amendment.