**BEN OEHRLEINS AND SONS AND DAUGHTER, INC.** n/k/a Dakota Resource Recovery, Inc.; Dick's Sanitation; Elk River Landfill, Inc.; Gallagher's Service, Inc.; Knutson Services, Inc.; Randy's Sanitation, Inc.; Poor Richard's, Inc.; Vasko Rubbish Removal, Inc.; Wasteco, Inc.; Waste Systems Corp.; and Walters Recycling & Refuse Service, Plaintiffs,

v.

**HENNEPIN COUNTY, MINNESOTA,**
Defendant.

Civ. No. 4–94–63.

United States District Court,
D. Minnesota,
Fourth Division.

March 28, 1996.

Robert E. Cattanach, Steven J. Wells, Alexandra B. Klass and Dorsey & Whitney, Minneapolis, MN, for plaintiffs.

Charles N. Nauen, Robert J. Schmit, William A. Gengler and Schatz, Paquin, Lockridge, Grindal & Holstein, Minneapolis, MN, and Michael O. Freeman, Hennepin County Attorney and Toni A. Beitz, Senior Assistant County Attorney, Minneapolis, MN, for defendant.

## ORDER

DOTY, District Judge.

This matter is before the court on plaintiffs' motion for partial summary judgment and defendant's motion to dismiss. Based on a review of the file, record and proceedings herein, and for the reasons stated, the court grants plaintiffs' motion for partial summary judgment and grants in part and denies in part defendant's motion to dismiss.

## BACKGROUND

Many of the essential facts may be found in the court's prior order denying defendant's motion to dismiss, reported at 867 F.Supp. 1430 (D.Minn.1994). In response to the Minnesota Waste Management Act, Minn. Stat. § 115A.02, *et seq.*, Hennepin County ("the County") enacted Ordinance 12. Ordinance 12 is a waste flow-control regulation which, consistent with the Act and widespread practice, reflects the hierarchy of waste disposal methods. Processing is considered to be environmentally superior to landfilling. Ordinance 12, as written, requires that all "Designated Waste" generated within Hennepin County shall be delivered to a "Designated Facility". The County, in implementing the ordinance, did not have to look far for a facility to designate. In the mid–1980s, the County issued approximately $150,000,000 in bonds for the construction of a "mass burn" facility which cost $129,000,000 to build. To date, only this facility (known as "HERC") and one other have been designated by the County. This designation permitted the County to charge a fee substantially higher than that charged by other waste disposal facilities.

Plaintiffs in the present action are haulers and processors of waste. They allege that Ordinance 12 discriminated against interstate commerce because, as written, it does not permit County waste to be disposed out-of-state. In late 1993, the County suspended, "until further notice", enforcement of Ordinance 12 with respect to waste destined for

out-of-state disposal. As a result, there is also presented the issue of the ordinance's constitutionality "as enforced."

## DISCUSSION

### I. Defendant's Motion to Dismiss

#### A. Standard of Review

A motion to dismiss for failure to state a claim tests the sufficiency of the complaint. *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974). When analyzing a motion to dismiss, the court looks to the complaint as pleaded. The complaint must be liberally construed and viewed in the light most favorable to the plaintiff. The court will dismiss a complaint only when it appears the plaintiff cannot prove any set of facts that supports the claim. *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957).

#### B. The Tax Injunction Act

■ Defendant's motion to dismiss has three grounds. First, the County argues that the court lacks jurisdiction to entertain plaintiffs' challenge to Ordinance 12 because the ordinance, as characterized by plaintiffs, constitutes a "tax". The Tax Injunction Act provides that:

> The district court shall not enjoin, suspend or restrain the assessment, levy or collection of any tax under State law where a plain, speedy and efficient remedy may be had in the courts of that state.

28 U.S.C. § 1341. This prohibition extends to suits for injunctive relief and to section 1983 claims in which a plaintiff seeks an injunction. *Burris v. City of Little Rock*, 941 F.2d 717, 720 (8th Cir.1991).

■ An essential predicate for invoking this defense is a determination that Ordinance 12 constitutes a tax. Whether it does so is a question of federal law, and this court need not defer to the label given by the County. *Wright v. McClain*, 835 F.2d 143, 144 (6th Cir.1987). The County does not argue that Ordinance 12 is a tax, rather the County suggests that plaintiffs characterize the fee-generating aspects of Ordinance 12 as a funding measure and thus a "tax". This

position can perhaps be traced to the County's reliance on *Indiana Waste Systems v. County of Porter*, 787 F.Supp. 859, 865 (N.D.Ind.1992). *Indiana Waste Systems* involved a $0.20 fee levied on each cubic yard of waste disposed of at plaintiff's landfill. In considering a Tax Injunction Act defense to the plaintiff's suit, the court stated that "IWS agrees that the fee is a tax by stating [in its complaint] '[n]o statute grants Porter County the express authority to impose a tax such as the one contemplated by Section V of the Ordinance'". *Id.*

Hennepin County's reliance on this case is misplaced. In determining whether Ordinance 12 is a tax the court must look toward the purpose underlying the ordinance. If it is primarily a revenue-raising measure, then it may be considered a tax. *Marigold Foods v. Redalen*, 809 F.Supp. 714, 719 (D.Minn. 1992). On the other hand, if it is primarily regulatory or punitive in nature, then it is not a tax. *Id.; see also American Petrofina Co. of Texas v. Nance*, 859 F.2d 840, 841 (10th Cir.1988) ("the mere fact that a statute raises revenue does not imprint upon it the characteristics of a law by which the taxing power is exercised").

Ordinance 12 clearly raises revenue. However, the "tipping fee" which the County has been able to charge is not the primary feature of the ordinance. Rather, the ordinance regulates the flow of waste originating in Hennepin County. The revenue raised, while undeniably significant, is incident to the requirement that waste must go to the County's designated facilities. As it is not a tax, the court is not precluded from considering the constitutionality of Ordinance 12.

#### C. Collateral Estoppel

■ The County argues that Count II of the complaint, which alleges that the County arbitrarily and capriciously enforced Ordinance 12 despite knowing of its unconstitutionality, must also be dismissed. On March 20, 1995, a discovery order was issued in the companion state-court litigation which arose following this court's dismissal of plaintiffs'

related claims.[1] The discovery order rejected plaintiffs' claim that certain putative work-product generated by the County was subject to the crime-fraud exception to the work-product doctrine. The order states:

Plaintiffs have at most established that [the County] was aware of potential constitutional problems with Ordinance 12. This awareness, however, is not enough to establish that [the County's] continued enforcement of that ordinance was in violation of the law. Accordingly, the Court denies Plaintiffs [sic] motion as said motion relates to [the crime fraud exception].

*Oehrleins v. Hennepin County,* No. 94–12549, at 8 n. 4 (Hennepin Cty. Dist.Ct. Mar. 20, 1995). The County argues that this statement collaterally estops the plaintiffs from proceeding under Count II. The court disagrees.

■ Collateral estoppel requires, *inter alia,* the existence of a valid, final judgment and an identity between the issue decided and the one for which preclusion is sought. Restatement (Second) of Judgments, § 27. The County has demonstrated neither of these. First, a discovery order is not a final judgment. Further, plaintiffs are not seeking in Count II a determination that the County is guilty of criminal or fraudulent conduct. Plaintiffs' substantive due process claim is a constitutional tort, the merits of which are not implicated by an order denying discovery based on the crime-fraud exception to the work-product doctrine. Defendant's motion to dismiss Count II based on collateral estoppel is therefore denied.

### D. Minnesota Constitution

■ Finally, the County argues that Count V, which articulates a violation of due process rights secured by Article I, § 7 of the Minnesota Constitution, fails to state a claim. Paragraph 83 of the complaint states that "Ordinance 12 impermissibly interferes with intrastate commerce in violation of the Minnesota due process clause." Paragraph 3 under plaintiffs' prayer for relief requests damages as a result of this violation.

The court agrees that this count fails to state a claim. Minnesota does not recognize a damage remedy for violations of Art. I, § 7 of the Minnesota Constitution. *Bird v. State Dept. of Public Safety,* 375 N.W.2d 36, 40 (Minn.Ct.App.1985). Moreover, the basis of plaintiffs' claim, restriction of intrastate commerce, was rejected in *Waste Systems Corp. v. County of Martin,* 784 F.Supp. 641 (D.Minn.1992). In *Waste Systems,* the court noted that, although the Minnesota Supreme Court held in 1975 that intrastate restrictions were invalid, this holding was legislatively overturned by Minn.Stat. § 115A.80, *et seq.,* which explicitly authorized such restrictions. *Waste Systems,* 784 F.Supp. at 647. Accordingly, this claim is dismissed with prejudice.

### E. Walters Recycling

Consistent with the court's prior order, 867 F.Supp. at 1435–1436, Count IV of the complaint (Sherman Act) is dismissed with respect to plaintiff Walters Recycling, a party added by the April 5, 1995, order of Magistrate Judge Lebedoff.

## II. Plaintiffs' Motion for Partial Summary Judgment

### A. Standard of Review

The court should grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). This standard mirrors the standard for judgment as a matter of law under Federal Rule of Civil Procedure 50(a), which requires the trial court to enter judgment as a matter of law if there can be but one reasonable conclusion as to the verdict. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). There is no issue for trial unless there is sufficient evidence favoring the non-moving party for a jury to return a verdict

---

1. By order dated June 21, 1994, the court dismissed plaintiffs' challenge to Ordinance 15 which imposed a waste-generation fee on Hennepin County waste. This dismissal was predicated upon the Tax Injunction Act and resulted in plaintiffs litigating Ordinance 15 in state court.

for that party. *Id.* at 249, 106 S.Ct. at 2510–11.

On a motion for summary judgment, the court views the evidence in favor of the non-moving party and gives that party the benefit of all justifiable inferences that can be drawn in its favor. *Id.* at 250, 106 S.Ct. at 2511. The nonmoving party, however, cannot rest upon mere denials or allegations in the pleadings. Nor may the nonmoving party simply argue facts supporting its claim will be developed later or at trial. Rather the nonmoving party must set forth specific facts, by affidavit or otherwise, sufficient to raise a genuine issue of fact for trial. *Celotex Corp. v. Catrett,* 477 U.S. 317, 324, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). If reasonable minds could differ as to the import of the evidence, judgment as a matter of law should not be granted. *See Anderson,* 477 U.S. at 250–51, 106 S.Ct. at 2511–12. If a plaintiff fails to support an essential element of a claim, however, summary judgment must issue because a complete failure of proof regarding an essential element renders all other facts immaterial. *Celotex,* 477 U.S. at 322–23, 106 S.Ct. at 2552–53. With this standard in hand, the court addresses plaintiffs' motion for partial summary judgment.

### B. Standing

■ An initial and persistent contention of the County is that these plaintiffs lack standing to challenge the constitutionality of Ordinance 12. The County notes that since August 1, 1994, state law has prohibited all Minnesota landfills from receiving unprocessed waste generated in the metropolitan area, which includes Hennepin County waste. Minn.Stat. § 473.848 (1994). Thus, the County argues that no plaintiff could have suffered injury after August 1994, as a result of Ordinance 12. This contention is without merit. Ordinance 12 requires processing at specific facilities. Section 473.848 does not, unlike Ordinance 12, require the use of the County's designated processing facilities prior to landfilling. It simply requires the use of some processing facility prior to disposal in Minnesota.

■ The County also argues that plaintiffs have not shown that they would have participated in an interstate market absent Ordinance 12. First, such a showing is not necessary. *See Poor Richard's, Inc. v. Ramsey County, Minn.,* 922 F.Supp. 1387, 1391–92 (D.Minn.1996). Moreover, the County's argument is refuted by the undisputed evidence that several plaintiffs did ship waste out-of-state as soon as enforcement was suspended. Several plaintiffs also incurred fines as a result of the enforcement of Ordinance 12. The court finds that plaintiffs have standing to challenge the constitutionality of Ordinance 12.

### C. Discrimination Under the Commerce Clause

■ The Commerce Clause of the United States Constitution provides that "Congress shall have the Power ... [t]o regulate Commerce ... among the several States." U.S. Const. Art. I, § 8, cl. 3. This clause of the Constitution is also understood to have a negative or dormant application which "denies the States the power unjustifiably to discriminate against or burden the interstate flow of articles of commerce." *Oregon Waste Sys., Inc. v. Department of Envtl. Quality of Oregon,* 511 U.S. 93, ——, 114 S.Ct. 1345, 1349, 128 L.Ed.2d 13 (1994). Thus, the dormant Commerce Clause "prohibits economic protectionism—that is, regulatory measures designed to benefit in-state economic interests by burdening out-of-state competitors." *New Energy Co. of Indiana v. Limbach,* 486 U.S. 269, 273, 108 S.Ct. 1803, 1807, 100 L.Ed.2d 302 (1988). The Supreme Court has also recognized, however, the right of states to adopt regulations designed to safeguard the health and safety of its people even though such regulations may incidentally burden interstate commerce. *City of Philadelphia v. New Jersey,* 437 U.S. 617, 624, 98 S.Ct. 2531, 2535–36, 57 L.Ed.2d 475 (1978). The Supreme Court has held that solid waste is an article of commerce and legislation by the states which restricts its movement is subject to constitutional scrutiny. *Id.* at 622–23, 98 S.Ct. at 2534–35.

■ In a Commerce Clause challenge, the burden is initially on the plaintiff to show that the legislation is discriminating against

interstate commerce on its face or in its purpose or effect. *Hughes v. Oklahoma,* 441 U.S. 322, 326, 99 S.Ct. 1727, 1731, 60 L.Ed.2d 250 (1979). Discrimination for purposes of the Commerce Clause is "differential treatment of in-state and out-of-state economic interests that benefit the former and burden the latter." *Oregon Waste,* 511 U.S. at ——, 114 S.Ct. at 1350. If a statute discriminates in favor of a local investment, it is *per se* invalid unless the state can prove, "under rigorous scrutiny, that it has no other means to advance a legitimate local interest." *C & A Carbone, Inc. v. Town of Clarkstown, N.Y.,* —— U.S. ——, 114 S.Ct. 1677, 128 L.Ed.2d 399 (1994).

### 1. Ordinance 12 as Written

■ The County argues that Ordinance 12 and its accompanying designation "permit the free flow of waste." Def's Mem. Opp.Summ.J. at 12 n. 11. The County thus seeks to distinguish Ordinance 12 from the very similar regulation struck down in *Carbone.* That regulation required all waste generated or channeled locally to be shipped to the municipally-built transfer station. Hennepin County's interpretation of the effect of Ordinance 12, however, is inconsistent with the plain language of the ordinance. Where waste may only be shipped to designated facilities, or a very limited number of exempted ones, the flow of waste is in no sense "free". The County's assertion that existing facilities (both in- and out-of-state) were "grandfathered" in by Ordinance 12 is irrelevant. More recent facilities are no less discriminated against because then-existing facilities were exempted.

Moreover, the ordinance and accompanying designation clearly favor in-state interests over out-of-state ones. In *Carbone,* the municipality argued that all waste, regardless of origin, was subject to processing at the designated facility. The municipality in *Carbone* therefore asserted that there was no discriminatory barrier. Hennepin County's argument, while somewhat confusing, is similar. The County suggests that the distinction drawn in Ordinance 12 concerns processing versus landfilling with a preference for the former. "In effect, Ordinance 12 as written barred the disposal of unprocessed waste only in landfills, both in-state and out-of-state." Def's Mem.Opp.Summ.J. at 12–13. This argument is unhelpful because the County may not prohibit landfilling beyond Minnesota's borders. *Carbone,* —— U.S. at ——, 114 S.Ct. at 1683. Overlooking the obvious inconsistency between the rest of this argument and the County's "force majeure" standing argument regarding Minn. Stat. § 473.848, it is incorrect to suggest that Ordinance 12 does not act with reference to location. The designation which gives effect to the ordinance requires processing at the two County-related facilities.[2]

In short, "[t]he ordinance is no less discriminatory because in-state … processors are also covered by the prohibition." *Carbone,* —— U.S. at ——, 114 S.Ct. at 1682; *Waste Systems Corp. v. County of Martin,* 784 F.Supp. 641 (D.Minn.1992), *aff'd,* 985 F.2d 1381 (8th Cir.1993). Like the regulation in *Carbone,* the ordinance hoards the demand for waste processing (itself an article of commerce) for the benefit of the preferred facilities. It is thus discriminatory and subject to strict scrutiny.[3]

---

2. The County disputes whether it "owns" HERC. It does not dispute, however, the fact that whatever ownership/management structure may currently exist, the County has an obvious financial interest in the success of its $129,000,000 investment. The court notes that the State of Minnesota apparently thinks that HERC is a county-owned facility. *See* Solid Waste Fee Report, December 1994 ("Hennepin County has contracts with HERC, the county-owned waste-to-energy plant"). The County also does not dispute plaintiffs' claim that it has a financial interest in the NSP facility, though it appears that interest is limited to the County's obligation to provide it with approximately 60,000 tons of waste per year.

3. In *Harvey & Harvey v. Chester,* 68 F.3d 788, 802–80 (3d Cir.1995), *cert. denied,* —— U.S. ——, 116 S.Ct. 1265, 134 L.Ed.2d 213 (1996), the Third Circuit suggested that a designating municipality might rebut a showing of discrimination with regard to outcome if it could demonstrate neutrality in the selection process. Even if the validity of that precedent is assumed, the County has made no effort to produce the "substantial evidence" required. *Harvey,* 68 F.3d at 803. In light of the fact that the County primarily designated its own facility, this would require a convincing showing of neutrality. Because the County has not advanced this argument, howev-

Ordinance 12 may survive strict scrutiny if the County can demonstrate that it had no other means to advance a legitimate local interest. *Carbone,* — U.S. at —, 114 S.Ct. at 1683. There can be no dispute, in light of the solid waste crisis which has given rise to much litigation nationwide, that environmentally sound waste disposal is a legitimate governmental objective. The County asserts that there were no alternatives to designation.

The problem with the County's waste disposal position, however, is that it is based on the premise that the County's efforts must be self-sustaining and financially isolated from general County activities.[4] Designation is, in effect, a financing measure designed to ensure the viability of the County's investment. This is precisely the sort of purpose which the Supreme Court invalidated in *Carbone:* "revenue generation is not a local interest that can justify discrimination against interstate commerce." *Carbone,* — U.S. at —, 114 S.Ct. at 1684. While subsidization of its facility through general taxes may be unattractive to the County, the Supreme Court has specifically endorsed that as a nondiscriminatory alternative for municipalities to secure the long-term survival of environmentally superior waste processing. *Carbone,* — U.S. at —, 114 S.Ct. at 1684. The record demonstrates that tax support was never a serious option for the County in light of its stated criteria. The County cannot rely, however, on a discriminatory regulation to compensate for its unwillingness to impose potentially less popular measures.

### 2. Ordinance 12 as Enforced

■ This case is in a somewhat unusual posture ·due to the County's temporary suspension of Ordinance 12 with respect to out-of-state disposal. As the foregoing discussion makes clear, Ordinance 12 is constitutionally infirm as written. Plaintiffs challenge Ordinance 12 on the basis of interstate effects, notwithstanding the limited enforcement. Therefore, the court will also consider the constitutionality of Ordinance 12 as enforced.

■ The County recycles its standing arguments detailed earlier by arguing that plaintiffs could not have suffered injury due to any restriction on interstate commerce. In response, plaintiffs recite several interstate effects despite the facially intrastate regulation under Ordinance 12 as enforced. First, plaintiffs assert that they are precluded from entering into long-term out-of-state hauling contracts because of the threat that enforcement might resume. This argument is effective as it appears the County had precisely this result in mind. A memorandum sent from the County's internal legal counsel to the county administrator stated:

> [S]uspending the enforcement of designated waste destined for disposal outside the state of Minnesota [ ] would put haulers on notice that it would not be prudent to enter into long-term contracts for waste disposal outside of the state at this time . . .
>
> The risk [that the entire Ordinance may be found to be unconstitutional] is, however, probably preferable to suspending enforcement of both in-state and out-of-state disposal, resulting in the County losing the waste altogether, to long-term hauler contracts.

Affidavit of Alexandra B. Klass Exh. 9.[5]

The County might have avoided providing plaintiffs with standing to challenge Ordinance 12 on this basis had it simply chosen to amend Ordinance 12 permanently. Instead, it elected to keep the threat of out-of-state enforcement viable for the apparently express purpose of discouraging interstate commerce. In light of this conclusion, the court considers the ongoing threat of en-

---

er, the court need not consider whether *Harvey* is applicable.

4. *See* Exh. Q. to the Affidavit of Charles N. Nauen, at 2 (financial consultant's opinion letter to county reciting criteria for solid waste plan, including "The County views the project as a self-financing, self-supporting enterprise isolated from the county's general operations.")

5. The county argues that this is privileged work product and/or attorney-client communications. Once disclosed, however, the communication loses its privileged character. Although it strenuously objects to the plaintiffs' use of this document, the County recites no facts or law to justify a finding of non-waiver.

forcement to constitute part of the actual enforcement of Ordinance 12. This threatened enforcement is discriminatory and without justification.

Plaintiffs also claim that the ordinance discourages out-of-state concerns from competing in Minnesota for the processing of Hennepin County waste. Thus, while the ordinance as written prohibits the exportation of waste for processing, the ordinance as enforced prohibits the importation of waste processing services. The County characterizes the issue somewhat differently, arguing that while Ordinance 12 may favor certain in-state interests over others, it does not implicate the Commerce Clause.

The County directs the court's attention to *Vince Refuse Service, Inc. v. Clark County,* 1995 WL 253121 (S.D.Ohio March 7, 1995), in support of this contention. At issue in *Vince Refuse* was an ordinance aimed at encouraging recycling. It mandated that all recyclable waste had to be routed through the county's chosen facility, the chosen landfill, or be shipped out-of-state. The incentive to recycle was provided by a fee which was charged for each ton of landfilled waste. A hauler bypassing recycling would pay more than it would when recyclables were removed. The district court rejected a Commerce Clause challenge to the ordinance reasoning that while it was discriminatory, such discrimination was only among purely in-state interests:

> To borrow from the Supreme Court in *Hughes [v. Oklahoma,* 441 U.S. 322, 325, 99 S.Ct. 1727, 1730–31, 60 L.Ed.2d 250 (1979)] the Commerce Clause was intended to prevent economic Balkanization among the states ... That provision of the Constitution was not intended to prevent economic Balkanization within a state. Herein, the protectionist aspect of the flow control regulations does not curtail the movement of solid waste into or out of Ohio. Therefore, those regulations do not discriminate against interstate commerce; rather the flow control regulations discriminate against intrastate commerce.

*Vince Refuse,* 1995 WL 253121 at *9.

▮ This analysis, however, fails to recognize the true burden to interstate commerce which designation ordinances effect. Even where out-of-state "safety valves" exist, such ordinances prohibit the importation of waste processing services which are indisputably an article of commerce. *Carbone,* ――― U.S. at ―――, 114 S.Ct. at 1682. Consequently, the court must consider whether the ordinance hinders the movement of waste processing services as well as restricts the movement of waste. As the Supreme Court observed:

> The essential vice in laws of this sort is that they bar the import of the processing service ... In *Dean [Milk Co. v. Madison,* 340 U.S. 349, 71 S.Ct. 295, 95 L.Ed. 329 (1951)] the local processing requirement at least permitted pasteurizers within five miles of the city to compete. An out of state pasteurizer who wanted access to that market might have built a pasteurizing facility within the radius. The flow control ordinance at issue here squelches competition in the waste-processing service altogether, leaving no room for investment from outside.

*Carbone,* ――― U.S. at ―――, 114 S.Ct. at 1683.

Here, an out-of-state processor simply may not compete in Minnesota for the processing of Hennepin County waste. The distinctions drawn by the ordinance are not, as the County suggests, between in-state and out-of-state landfills; they are between its local, proprietary facilities and all other interests, including out-of-state facilities. Nor does the ordinance simply distinguish between environmentally superior and inferior methods of disposal. An out-of-state concern which built a state-of-the-art processing facility in the middle of Hennepin County could not lawfully receive any waste from the County. This is classic discrimination against interstate commerce. Thus, the County must justify its discrimination, subject to the court's searching scrutiny. As described above, the County has failed to do so. Moreover, consistent with the Supreme Court's analysis in *Carbone,* the conclusion that Ordinance 12 as enforced is discriminatory renders unnecessary any inquiry as to whether it can be justified under the balancing test set forth in *Pike v. Bruce Church, Inc.,* 397 U.S. 137, 90 S.Ct. 844, 25 L.Ed.2d

174 (1970). Accordingly, the court holds that Ordinance 12, as written and as enforced, is an invalid attempt to protect local interests (principally, the County's) from interstate competition. Summary judgment on Count I in favor of plaintiffs and against defendant is therefore granted.

### D. 42 U.S.C. § 1983

 Plaintiffs' Commerce Clause challenge is also predicated upon 42 U.S.C. § 1983.[6] After the Supreme Court's decision in *Dennis v. Higgins,* 498 U.S. 439, 451, 111 S.Ct. 865, 872–73, 112 L.Ed.2d 969 (1991), it is clear that § 1983 supports such claims. Liability is evident as a result of the foregoing discussion. The amount of damages, however, remains disputed by Hennepin County. Thus, the court grants plaintiffs' motion for partial summary judgment on Count III based on liability and denies it as to damages.

Plaintiffs also move for attorneys fees pursuant to 42 U.S.C. § 1988. As a prevailing party, plaintiffs are entitled to attorneys fees. The court defers consideration of this issue until damages and the merits of Count II have been determined.

### CONCLUSION

Accordingly, **IT IS HEREBY ORDERED** that plaintiffs' motion for partial summary judgment is granted as follows:

1. Ordinance 12 as written and as enforced discriminates against interstate commerce and is therefore invalid;

2. The County is permanently enjoined from enforcing the provisions of Ordinance 12;

3. Partial summary judgment on Counts I & III in favor of plaintiffs and against defendant is granted;

**IT IS FURTHER ORDERED** that defendant's motion to dismiss is granted with re-

spect to Counts IV and V of the complaint and in all other respects is denied.

---

**6.** The County asserts that plaintiffs are claim-precluded from challenging the constitutionality of Ordinance 12 prosecutions because they did not challenge its constitutionality while being prosecuted. In light of *Haring v. Prosise,* 462 U.S. 306, 103 S.Ct. 2368, 76 L.Ed.2d 595 (1983), and the County's failure to articulate a Minnesota rule of claim preclusion which effects this result, the court concludes that there is no bar to plaintiffs' section 1983 claim.