**SANIFILL, INC., Respondent,**

v.

**KANDIYOHI COUNTY, Minnesota, Appellant.**

No. C8–96–1475.

Court of Appeals of Minnesota.

Feb. 11, 1997.

Considered and decided by PETERSON, P.J., and WILLIS and FORSBERG *, JJ.

## OPINION

WILLIS, Judge.

Kandiyohi County (county) challenges the district court's grant of summary judgment in favor of Sanifill and its denial of summary judgment to the county. The county argues that the district court erred in concluding that the combination of the county's proposed Waste Management Service Fee (service fee) and its landfill tipping fee violates the Commerce Clause of the federal constitution. Alternatively, the county argues that summary judgment was inappropriate because there were genuine issues of material fact in dispute.

## FACTS

The county owns and operates a landfill within the county. Sanifill is in the business of hauling waste and owns landfills in Minnesota and Iowa. In the summer of 1995, Sanifill purchased three waste hauling companies in Kandiyohi County.

In response to notification by Sanifill that it would begin shipping waste to its landfills outside the county if the tipping fee of $50.60 per ton at the county landfill were not lowered, the county initiated action to change its waste disposal fee structure. The county approved a measure that would (1) lower the tipping fee to $25 per ton of waste disposed of at the landfill and (2) implement a service fee of $25.60 per ton of waste generated within the county, regardless of its destination. Implementation of these measures has been delayed because of this litigation.

Sanifill sued the county and moved for summary judgment, alleging that (1) the proposed fee structure violates the Commerce Clause and (2) the service fee is not authorized under Minn.Stat. § 400.08 (1996). The county also moved for summary judgment, arguing that the proposed fee structure did not violate the Commerce Clause. The district court granted summary judgment to

Timothy R. Thornton, Jack Y. Perry, Briggs & Morgan, P.A., Minneapolis, for Respondent.

Thomas L. Johnson, Virginia J. Knudson, Ben I. Omorogbe, Gray, Plant, Mooty, Mooty & Bennett, P.A., Minneapolis, for Appellant.

* Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

Sanifill and denied the county's motion, concluding that (1) the proposed fee structure amounts to an illegal burden on interstate commerce and (2) the question of whether the fee is authorized by statute is moot. The county brought a motion for clarification or reconsideration, arguing that it was not clear whether the court's order enjoined use of the service fee only to the extent that it subsidized the landfill, but allowed its use for other county environmental programs, or whether the order enjoined use of the service fee entirely. The court denied the motion and this appeal followed.[1]

## ISSUES

1. Did the district court err by concluding that Kandiyohi County's proposed waste management fee structure violates the Commerce Clause?

2. Were there genuine issues of material fact in dispute, making summary judgment inappropriate?

3. Is a waste management service fee authorized under Minn.Stat. § 400.08 (1996)?

## ANALYSIS

On appeal from summary judgment, this court determines whether there are any genuine issues of material fact and whether the district court correctly applied the law. *State by Cooper v. French*, 460 N.W.2d 2, 4 (Minn.1990). In doing so, this court views the evidence in the light most favorable to the party against whom judgment was granted. *Fabio v. Bellomo*, 504 N.W.2d 758, 761 (Minn.1993).

### 1. Commerce Clause

■ The Commerce Clause of the United States Constitution provides that Congress

has the power to "regulate Commerce * * * among the several States." U.S. Const. art. I, § 8, cl. 3. The Commerce Clause has another aspect, commonly referred to as the dormant Commerce Clause, which "denies the States the power unjustifiably to discriminate against or burden the interstate flow of articles of commerce." *Oregon Waste Sys. v. Department of Envtl. Quality*, 511 U.S. 93, 98, 114 S.Ct. 1345, 1349, 128 L.Ed.2d 13 (1994). "[S]olid waste is an article of commerce and legislation by the states which restricts its movement is subject to constitutional scrutiny." *Ben Oehrleins & Sons & Daughter, Inc. v. Hennepin County*, 922 F.Supp. 1396, 1401 (D.Minn.1996) (citing *City of Philadelphia v. New Jersey*, 437 U.S. 617, 98 S.Ct. 2531, 57 L.Ed.2d 475 (1978)).

■ A party challenging an ordinance under the dormant Commerce Clause has the initial burden of proving that the ordinance discriminates against or burdens interstate commerce on its face or in its purpose or effect. *Hughes v. Oklahoma*, 441 U.S. 322, 336, 99 S.Ct. 1727, 1736, 60 L.Ed.2d 250 (1979). If the challenging party shows that the ordinance results in "differential treatment of in-state and out-of-state economic interests that benefits the former and burdens the latter," it will be found discriminatory and will be subject to strict scrutiny. *Oregon Waste*, 511 U.S. at 99, 114 S.Ct. at 1350. An ordinance subject to strict scrutiny is invalid unless there is no non-discriminatory alternative to protect legitimate local interests. *Id.* at 100–01, 114 S.Ct. at 1351.

■ The district court concluded that the proposed fee structure was not discriminatory on its face, but that it was discriminatory in purpose and effect. In finding the proposed fee structure discriminatory in pur-

---

1. Sanifill argues that because the county obtained a transcript prior to appeal, its brief was untimely under Minn. R. Civ.App. P. 131.01 and it is therefore barred by Minn. R. Civ.App. P. 134.01 from making oral argument in this court. Rule 131.01 provides that an appellant must file a brief within 30 days after delivery of the transcript, or if the transcript is obtained prior to appeal, the appellant's brief is due 30 days after filing of the notice of appeal. For purposes of rule 131.01, the delivery date of a transcript that complies with Minn. R. Civ.App. P. 110.02, subd.

4, is dispositive. The partial transcript the county requested to prepare its posttrial motions was not obtained pursuant to rule 110.02, subd. 4, and the copies required by that rule were not delivered until after the appeal was filed. The county's brief was therefore not due until 30 days after the delivery of the full transcript and was timely under rule 131.01. Further, Minn. R. Civ.App. P. 127 provides that Sanifill should have raised this issue by motion rather than in its brief.

pose, the court noted that it was adopted in response to Sanifill's decision to export waste and was designed to "impede the interstate competition posed by [Sanifill]." The court found that even if the proposed fee structure did not have a discriminatory purpose, its effect would be discriminatory, noting that the "combination Service Fee / Facility Fee nets the County the same amount previously raised through the tipping fee alone," and

> [o]nce the garbage has been collected by the hauler, the lower tip fee at the County landfill, made possible by a subsidy from the service fee, renders other landfills uncompetitive, essentially forcing all haulers to either utilize the services of the County landfill or incur higher total costs due to transportation expenses and/or higher tip fees at other facilities.

The county argues that because the service fee will not subsidize municipal solid waste (MSW) operations at the landfill, the district court erred in finding the ordinance discriminatory. It claims in its brief to this court that

> the Service Fee will replace the portion of the tipping fee that has historically been used to fund various County solid waste programs that are not in competition with Sanifill,

and argues that there was confusion in district court about where the service fee proceeds would be used because "several of these solid waste programs happen to be located at the Landfill in areas adjacent to the County's MSW operations."

The county did not, however, provide a breakdown of where the service fee proceeds would go, and prior to this appeal it made several statements that indicate some of the service fee proceeds would be used for MSW operations at the landfill. First, in its summary judgment brief, the county stated that

> [a] more stable revenue stream for the County's waste management programs such as the [service] Fee is needed. * * * The costs of the landfill may increase dramatically if any number of contingencies occur.

Second, the ordinance itself states that the purpose of the service fee is to

> cover the cost of solid waste management, including financial assurance, capping, construction of monitoring wells at the [landfill], and the operations of the Kandiyohi County recycling and household hazardous waste programs.

Finally, at the summary judgment hearing, in discussing how the proceeds of the service fee would be used, the county, through its counsel, stated

> [t]his is not an exact science; * * * you can't predict with precision how much money you're going to need to run a landfill one year versus the other environmental programs the next.

██ Even viewing the evidence in the light most favorable to the county, it appears that, as the district court stated, the county planned to use "at least part of the Waste Management Service Fee * * * for direct financial support of the County landfill."[2] Because of the subsidy, users of other landfills would be forced to pay not only the tipping fees at the disposal facility they use, but also for county landfill operations to the extent that the service fee subsidizes the county landfill, while those who use the county landfill would enjoy an artificially low tipping fee. Moreover, other disposal facilities would be less able to compete with the county landfill if it is able to charge an artificially low tipping fee because of the service fee subsidy.[3]

Because the service fee proceeds are proposed to be used at least in part to subsidize MSW landfill operations, we agree with the

---

**2.** The amount of the subsidy is not important in determining whether there is discrimination. The Supreme Court has held that

> [t]he volume of commerce affected measures only the *extent* of the discrimination; it is of no relevance to the determination whether a State has discriminated against interstate commerce.

*Wyoming v. Oklahoma*, 502 U.S. 437, 455, 112 S.Ct. 789, 801, 117 L.Ed.2d 1 (1992).

**3.** The fact that intrastate as well as interstate commerce may be adversely affected by the ordinance is immaterial to the determination of whether it is discriminatory for Commerce Clause purposes. *See Dean Milk Co. v. City of Madison*, 340 U.S. 349, 354 n. 4, 71 S.Ct. 295, 298 n. 4, 95 L.Ed. 329 (1951).

district court that the combination of the service fee and the tipping fee would be discriminatory in its effect. The district court did not err in finding the proposed fee structure discriminatory and subject to strict scrutiny. *See Zenith/Kremer Waste Sys., Inc. v. Western Lake Superior Sanitary Dist.*, 558 N.W.2d 288 (Minn.App.1997) (concluding that waste disposal fee structure that subsidized local facility was discriminatory in its effect).

The county argues that even if the strict scrutiny test is applied, the ordinance is constitutional. Once discrimination is established, an ordinance must overcome a virtual *per se* rule of invalidity; the county must show that the ordinance serves a legitimate purpose and that there are no reasonable nondiscriminatory alternatives available. *Oregon Waste*, 511 U.S. at 100–101, 114 S.Ct. at 1351. The county points out that the ordinance furthers legitimate environmental goals and claims that the alternatives suggested by the district court, namely sale of the landfill or assessment of a general tax, are not viable. Although the county may be correct that it would be difficult to sell the landfill, neither that difficulty nor the political difficulty of the imposition of a general revenue tax is sufficient to make them unreasonable alternatives to the proposed fee structure. *See C & A Carbone, Inc. v. Town of Clarkstown*, 511 U.S. 383, 394, 114 S.Ct. 1677, 1684, 128 L.Ed.2d 399 (1994) (concluding that general revenue tax was reasonable alternative to discriminatory funding mechanism for waste processing facility).[4]

The county further argues that the test enunciated in *Pike v. Bruce Church, Inc.*, 397 U.S. 137, 90 S.Ct. 844, 25 L.Ed.2d 174 (1970), rather than a strict scrutiny analysis, applies. Under the *Pike* test, an ordinance will be invalidated if the burden is "clearly excessive in relation to the putative local benefits." *Id.* at 142, 90 S.Ct. at 847. The *Pike* test applies when the party challenging the ordinance cannot show discrimi-

nation, but can nonetheless show that the ordinance affects interstate commerce. *Id.* The *Pike* test is not applicable here, because the proposed fee structure discriminates against interstate commerce.

The county maintains that it was merely acting as a market participant in setting a competitive tipping fee. A local government acting as a market participant is not subject to the constraints of the Commerce Clause. *White v. Massachusetts Council of Constr. Employers, Inc.*, 460 U.S. 204, 208, 103 S.Ct. 1042, 1044, 75 L.Ed.2d 1 (1983). "A state's actions constitute 'market participation' only if a private party could have engaged in the same actions." *SSC Corp. v. Town of Smithtown*, 66 F.3d 502, 512 (2d Cir.1995), *cert. denied*, —— U.S. ——, 116 S.Ct. 911, 133 L.Ed.2d 842 (1996). To the extent that the service fee subsidizes MSW landfill operations, implementation of the proposed fee structure is an action not available to the county's competition. The county is therefore not acting merely as a market participant and is subject to the constraints of the Commerce Clause.

## 2. Material Facts in Dispute

The county contends that there are material facts in dispute regarding (1) whether the service fee would be used to subsidize the county's MSW operations at the landfill, (2) whether the service fee would have an effect on interstate commerce, and (3) whether there are funding sources available that are less burdensome than the proposed fee structure.

There are no genuine issues of material fact in dispute as to whether the service fee would be used to subsidize landfill operations or whether the proposed fee structure would have an effect on interstate commerce. As discussed above, the record shows that MSW operations at the landfill would be subsidized by the service fee, forcing Sanifill

---

4. The county asserts that its proposed service fee is a constitutionally authorized funding mechanism, analogous to the general revenue tax approved in *Carbone*. The service fee is not, however, analogous to a general revenue tax because it is collected by the waste haulers and does not

go to the general fund. Further, even if the fee could be characterized as a general revenue tax, it would still be subject to the constraints of the Commerce Clause. *Complete Auto Transit, Inc. v. Brady*, 430 U.S. 274, 279, 97 S.Ct. 1076, 1079, 51 L.Ed.2d 326 (1977).

and other users of out-of-state landfills to pay a portion of county landfill costs even if they do not use the county landfill. Interstate commerce would therefore be affected by the fee structure.

The county cites *Atlantic Coast Demolition & Recycling, Inc. v. Board of Chosen Freeholders of Atlantic County,* 48 F.3d 701 (3rd Cir.1995), in support of its argument that factual disputes remain with regard to the availability of less burdensome funding sources. In that case, the district court did not even consider the question of less burdensome alternatives because it applied the *Pike* balancing test. *Id.* at 717–718. The Third Circuit concluded that strict scrutiny applied, and therefore remanded to the district court because it found it desirable to have the "benefit of the district court's views [on the issue of less burdensome alternatives] before this controversy is finally resolved." *Id.* at 718. Here, the district court did consider whether less burdensome alternatives are available. The county's dissatisfaction with the alternatives to the proposed fee structure suggested by the district court does not create a factual dispute that would preclude summary judgment.

### 3. Statutory Authorization

█ Sanifill alleged in district court that Minn.Stat. § 400.08 (1996) does not authorize the service fee. Because it concluded that the combination of the service fee and the tipping fee violates the Commerce Clause, the district court found the issue of statutory authorization moot. The county now argues that the issue was not moot and that the service fee is authorized by the statute.

The county is authorized by section 400.08 to "collect just and reasonable rates and charges for solid waste management services." *Id.,* subd. 3. The county may implement a service fee, but may not implement its service fee as proposed because the subsidy of MSW landfill operations violates the Commerce Clause.

### DECISION

The district court correctly concluded that the county's proposed fee structure violates the Commerce Clause and properly granted summary judgment to Sanifill.

**Affirmed.**